In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2725

JEFFREY WEBB,

Plaintiff-Appellant,

v.

CLYDE L. CHOATE MENTAL HEALTH AND
DEVELOPMENT CENTER, a facility of the State
of Illinois Department of Mental Health and
Developmental Disabilities, THOMAS RICHARDS,
Facility Director, in his official capacity, MIKE
MOORMAN, Labor Relations Administrator,
in his official capacity, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 97-C-4101--David R. Herndon, Judge.

Argued September 7, 2000--Decided October 25, 2000

Before Bauer, Posner, and Evans, Circuit Judges.

Bauer, Circuit Judge.  Jeffrey Webb appeals from
the district court's entry of summary judgment in
favor of Clyde L. Choate Mental Health and
Development Center ("Choate"), on cross motions,
on his claim that Choate failed to reasonably
accommodate his disability and terminated his
employment in violation of the Americans with
Disabilities Act ("ADA"), 42 U.S.C. sec. 12101 et
seq. Webb contends that the district court erred
in finding that he was not a "qualified
individual with a disability" within the meaning
of the ADA, that he was provided with reasonable
accommodations to perform the essential functions
of his job, and that he was not discharged
because of his disability. On appeal, Choate
disputes our jurisdiction over this appeal. For
the reasons set forth below, we find that we have
jurisdiction over this appeal, and affirm the
district court's grant of summary judgment for
Choate.

BACKGROUND

        Jeffrey Webb has a bachelor's degree in

psychology and master's degree in psychological counseling, and is working toward a Ph.D. Choate is a residential facility operated by the State of Illinois to serve the needs of developmentally disabled persons. Webb began his employ at Choate in 1982 as a mental health technician trainee. Over his twelve years at Choate, Webb was promoted to Mental Health Technician I, Mental Health Technician II, and Psychologist Associate. In 1989, Webb developed severe asthma and took a leave of absence until 1993. In 1995, Choate promoted Webb to the position of "Psychologist I." Some of the typical responsibilities of a Psychologist I include performing the initial assessment of those in need of mental health services, and providing group and individual therapy, as well as crisis intervention. The position of Psychologist I is considered a "direct care" position because direct interaction with patients is an essential function of the job. Therefore, all "direct care" staff members are specifically trained to handle patients who display unpredictable violent tendencies.

Due to his asthma, Webb again took a leave of absence until 1996. On July 8, 1996, he made a request for accommodation from Choate because his ability to breathe, walk, and work was impaired by his asthma, osteoporosis, and weakened immune system. Webb requested:

(1) a well-ventilated office removed from asbestos or fibrous insulating material;

(2) adherence to job position duties;

(3) an immediately accessible, lockable storage unit for medication;

(4) an immediately accessible, lockable refrigeration unit for storage of medication and liquid that must be kept cool;

(5) permission to attend doctor appointments with prior notification;

(6) prior notice of application of insecticide, disinfectant or other chemical with a strong odor to the work area and permission to avoid that area for 24 hours following application;

(7) exemption from intentional contact with patients displaying violent behavior; and

(8) exemption from intentional contact with patients known to have infectious conditions.

After consideration and discussion, Choate accommodated Webb's first six requests. Choate, however, denied Webb's requests for exemption

from intentional contact with patients known to be violent and/or have infectious conditions. The basis for Choate's refusal was that the position of Psychologist I required significant direct contact with patients who displayed unpredictable violent behavior. Further, the nurses at Choate confirmed that the impaired communication skills of most patients made it difficult to discover whether incoming patients were carrying any infectious diseases.

Webb filed suit under the ADA because Choate refused these two requests. Webb argued that the requests could be reasonably accommodated. For example, Webb suggested that his contact with contagious patients could be postponed until the infectious stage had passed. Also, he proposed that other members of the "direct care" staff could intervene if there were any sudden violent outbursts by patients in his care. According to Webb, his request was merely to be exempted from "intentional" contact from patients "known" to be violent and/or infectious. He claims that he is willing to "accept the risk" of "unintentional" interaction with patients whose conditions are "unknown."

Both Webb and Choate filed motions for summary judgment, and the district court granted Choate's motion. The district court found that Webb was not a "qualified individual with a disability" under the ADA, and further, even if Webb were a qualified individual, that Choate had reasonably accommodated him.

DISCUSSION

A.  Jurisdiction

At oral argument, Choate requested leave to submit a supplemental brief, arguing that we lack jurisdiction over this appeal. We granted Choate's request because, although both parties in their briefs submitted that we had jurisdiction under 28 U.S.C. sec. 1291, "[i]t is never too late, of course, to raise a jurisdictional challenge . . . ." Karazanos v. Madison Two Assoc., 147 F.3d 624, 626 (7th Cir. 1998). Therefore, before proceeding on the merits, we address this jurisdictional challenge.

On June 11, 1999, the district court granted summary judgment in favor of Choate. Webb filed a post-judgment motion in the district court on June 23. On July 7, Webb filed a notice of appeal from the grant of summary judgment, docketed as case No. 99-2725. We issued an order on July 20th to Webb stating:

A preliminary review of the short record

indicates that the order appealed from may not be a final appealable judgment within the meaning of 28 U.S.C. sec. 1291.

A notice of appeal filed before the district court issues its ruling on a timely Rule 59 motion is ineffective until the order disposing of the motion is entered on the district court's civil docket. Fed. R. App. P. 4(a)(4).

In the present case, plaintiff filed a motion to alter or amend on June 23, 1999. This may be a timely Rule 59 motion. See Charles v. Daley, 799 F.2d 343, 347 (7th Cir. 1986). As such, this appeal may be premature, because it appears that the district court has not disposed of the motion and entered its order on the district court's civil docket.  Accordingly,

IT IS ORDERED that plaintiff-appellant shall file, on or before August 3, 1999, a brief memorandum stating why this appeal should not be STAYED pending the entry of the order disposing of the [post-judgment] motion. A motion for voluntary dismissal pursuant to Fed. R. App. P. 42(b) will satisfy this requirement. . . .

The following day, July 21st, the district court denied Webb's post-judgment motion. On July 26, Webb filed in this Court a document entitled "Judicial Memorandum-- Motion for Voluntary Dismissal Pending a Final Order," requesting dismissal of the appeal, No. 99-2725, pending the district court's final order. The motion stated that Webb "filed his appeal within the 30 day required period after the entry of judgment to assure his time for appeal would be protected, aware that a Rule 59 Motion would likely stay the appeal." However, it went on to state that Webb "hereby moves this Court to dismiss his appeal, pending a final Order . . . ." We responded in an order, dated August 30th, which stated: "the motion for voluntary dismissal is GRANTED and appeal no. 99-2725 is DISMISSED pursuant to Fed.R.App.P. 42(b)."

Prior to this grant, on August 24, Webb filed a notice of appeal from the post-judgment order, which was docketed as case No. 99-3189 on August 25th. On September 1, we issued the following order:

a notice of appeal in a civil case [must] be filed in the district court within 30 days of the entry of the judgment or order appealed. In this case, the order denying plaintiff's post-judgment motion was entered on July 22, 1999, and the notice of appeal was filed on August 24, 1999, one day late. . . .

[Appellant is ordered to] file a brief memorandum stating why this appeal should not be dismissed for lack of jurisdiction. A motion for voluntary dismissal pursuant to Fed. R. App. P. 42(b) will satisfy this requirement. . . . If appellant wishes to request an extension of time in which to file the notice of appeal, he should file an appropriate motion in the district court, not this court, as soon as possible. Appellant's jurisdictional memorandum should include a discussion of the status of any such motion.

In response to this order, on September 9, Webb filed a document entitled "Status Report On Extension of Time Within Which to File Notice of Appeal of Post-Judgment Order." In the document Webb stated that he was "withdraw[ing] his Notice of Appeal of his Post-Judgment Motions" and requested "that a briefing schedule be set on the district court's denial of summary judgment." On September 14, the district court denied Webb's request for a time extension. On September 22, we issued another order, which explained that we construed the status report "as a motion to dismiss this appeal," and ordered the appeal dismissed. We denied a briefing schedule since we deduced that Webb had "voluntarily dismissed his appeal . . . ."

On September 30, Webb filed a document named "Motion to Reconsider Order of Court Dismissing Appeal and to Recall Mandate of Dismissal and Motion for Leave to Withdraw Dismissal of Appeal in Case No. 99-2725." On November 12, we granted Webb's motion, stating that the "mandate in 99-2725 is RECALLED and this appeal is REINSTATED. IT IS FURTHER ORDERED that the motion to dismiss the appeal filed on August 25, 1999 [No. 99-3189] is WITHDRAWN." Upon reinstatement, a briefing schedule was set and oral arguments were arranged. As mentioned, Choate challenged our jurisdiction at oral argument.

Choate argues that we lack jurisdiction because once Webb's appeal had been voluntarily dismissed, it could not have been reinstated by the September 30th motion because it was filed outside the time limit for filing the original notice of appeal. See Barrow v. Falck, 977 F.2d 1100, 1103 (7th Cir. 1992) (holding that the court cannot "resurrect a notice of appeal after the time provided by Fed.R. App.P. 4 for commencing an appeal"; rather, it must be treated as if "notice [was] never filed"). Choate further contends that since Webb's motion to reinstate was too late, we "lack the power to reinstate" the appeal. Webb counters that we have the inherent power to recall our mandate, and properly did so in this case. While we believe Choate correctly states the law in Barrow, the

facts of this case do not fit squarely within that case. Rather, we view this case as similar to Patterson v. Crabb, 904 F.2d 1179 (7th Cir. 1990). In Barrow, after we issued an order worded exactly as the July 20th order in this case, the appellants voluntarily dismissed the appeal rather than explain why we had jurisdiction. See 977 F.2d at 1102. The appellants later argued that the appeal should be reinstated because of judicial error. See id. We viewed this as a strategic choice of the attorney, albeit a poor one. See id. In Patterson, we dismissed the appeal because we found no final order in the record. See 904 F.2d at 1179. However, the final order had been entered, but was overlooked. See id. As in Patterson, the jurisdictional facts of this case present a series of misunderstandings between Webb and this Court. We now turn to untangling them.

The first gaffe occurred when Webb's counsel misinterpreted our July 20th order and merged the options of submitting a memoranda to explain why the appeal ought to be stayed, or move for voluntary dismissal./1 This misinterpretation is demonstrated in the title--"Judicial Memorandum--Motion for Voluntary Dismissal Pending a Final Order." Webb believed our order meant that "the appeal would be temporarily dismissed but once the order of the district court on the post-judgment motion was received, the appeal of the summary judgment would be reinstated." We interpreted Webb's motion to be a full dismissal, and not a memorandum explaining why the appeal should be stayed. Webb, in turn, interpreted our dismissal as a stay, probably because counsel had wrongly labeled the motion a "voluntary dismissal."

Webb failed to call our attention to the fact that on July 21st, a day after our order was entered, the district court had ruled on the post-judgment motion. See 904 F.2d at 1179-80. We, of course, wish that this matter had been resolved earlier, but we believe this mix-up is similar to that in Patterson. The fault lies with a misinterpretation of this Court's orders and the mislabeling of the motion. There was also judicial error in misreading the motion before the appeal was dismissed. The motion asked for both the appeal to be stayed and for it to be dismissed. We ought to have caught the discrepancy and sought a resolution.

We have noted that we will only reinstate an appeal in extraordinary circumstances. See United States v. Holland, 1 F.3d 454, 455-56 (7th Cir. 1993) (citing Patterson, 904 F.2d at 1180). This power will be used sparingly. Therefore, we must emphasize that this is not a case in which only

counsel misunderstood the law. A misunderstanding of the law or fact by counsel alone would not compel us to reinstate an appeal. Rather, this is a case of misinterpretations by both the Court and counsel. However, as in Patterson, our decision might be different if Choate had been prejudiced by these events. See 904 F.2d at 1180. We see no prejudice here. Both parties have been laboring on this case since June of 1999, and the issues were briefed and ready for oral argument before this Court.

As to our power to reinstate the appeal, we again rely on Patterson, which reasoned that "[t]he assertion of this power fills a gap in the appellate rules and is well within the traditional authority of the courts, properly described as inherent, to regulate procedures in them in the absence of legislatively prescribed rules." Id.; see Holland, 1 F.3d at 455. Therefore, we hold that we have jurisdiction to hear this appeal. We now address Webb's ADA claim.

### B. Standard of Review

Our review of the district court's grant of summary judgment for Choate is de novo. We must construe all facts and inferences in the light most favorable to the nonmoving party. Thus, the district court's grant of summary judgment will be affirmed only if the record as a whole reveals no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We apply this standard with added rigor in employment discrimination cases, where intent and credibility are crucial issues. See Schmidt v. Methodist Hosp. of Indiana, Inc., 89 F.3d 342, 343 (7th Cir. 1996).

### C. "Disability" under the ADA

The ADA proscribes employers from discriminating against:

a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. sec. 12112(a). A qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position

that such individual holds or desires." 42 U.S.C. sec. 12111(8). Therefore, we must first address whether Webb's condition qualifies as a "disability" as defined under the ADA.

For the purposes of Webb's claim, a disability includes "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. sec. 12102(2)(A); see Bragdon v. Abbott, 524 U.S. 624, 631 (1998). "Substantially limits" means that the person is either unable to perform a major life function or is "significantly [restricted in] the duration, manner or condition under which [the] individual can perform a particular major life activity, as compared to the average person in the general population . . . ." 29 C.F.R. sec. 1630.2(j). With regard to the major life activity of working, "substantially limits" means the individual is "significantly [restricted in] the ability to perform a class of jobs or a broad range of jobs in various classes." Weiler v. Household Finance Corp., 101 F.3d 519, 525 (7th Cir. 1996). "Thus, an individual is not substantially limited in working just because he or she is unable to perform a particular job for one employer, or because he or she is unable to perform a specialized job or profession requiring extraordinary skill, prowess or talent"; instead, "the impairment must substantially limit employment generally." 29 C.F.R. sec. 1630.2(j), App. (1999); see Byrne v. Bd. of Educ., School of West Allis-West Milwaukee, 979 F.2d 560, 565 (7th Cir. 1992). Webb has the burden of presenting evidence to demonstrate that his impairment limited an entire class of jobs. See Skorup v. Modern Door Corp., 153 F.3d 512, 515 (7th Cir. 1998); see also 29 U.S.C. sec. 1630.2(j)(3)(ii) (listing factors to assess the substantiality of the impairment on plaintiff's ability to work).

Webb produced evidence that he suffers from severe asthma, osteoporosis, and a weakened immune system. Webb contends that his major life activity of working is substantially impaired by these conditions./2 The district court addressed whether Webb was substantially impaired in the major life activity of working, and concluded that Webb was not disabled under the ADA because his asthma, osteoporosis, and weakened immune system did not substantially limit his employment as a psychologist generally.

Reviewing the facts in the light most favorable to Webb, we affirm that Webb has not established that he suffers from a disability under the ADA because he has not presented evidence that his condition prevents him from performing a class of jobs. In Davidson v. Midelfort Clinic, Ltd., a

therapist with ADD brought suit under the ADA because she was fired for her slowness in dictating her notes from counseling sessions. See 133 F.3d 499, 503 (7th Cir. 1998). This Court found that the therapist failed to show that dictating was a skill other counseling positions required, and thus held that the therapist was not substantially limited in the major life activity of working. See id. at 507. We explained, "[a]t most, the evidence in this case suggests as a result of ADD, Davidson was unable to perform her job at Midelfort. Davidson has come forward with no evidence from which one might reasonably infer that ADD precluded her even from holding other comparable positions as a therapist. . . . and the record does not suggest that ADD imposed other limitations on her ability to function effectively in her role as a counselor." Id.

Webb's case is similar to Davidson; while Webb's condition may impair his ability to perform in the specialized niche of psychology practiced at Choate, which requires direct interaction with violent and/or infectious patients, Webb is not disabled as a psychologist generally. Employment as a Psychologist I at Choate does not resemble the typical sedentary "office therapy" most commonly associated with the profession. Rather, a psychologist at Choate interacts with patients coping with intense developmental problems. Many patients are housed at Choate precisely because they exhibit unpredictable violent behavior--the very behavior Webb asserts he is unfit to counsel. Webb is not precluded from employment as a psychologist in an environment that does not house patients such as those at Choate.

Moreover, as noted by the district court, this result is consistent with the explanation and example provided in 29 C.F.R. sec. 1630(j). The example involves an airline pilot who suffers from a minor vision impairment, which disqualifies him from employment with a commercial airline. While this narrow category of employment is foreclosed, the individual has the option of employment as a co-pilot for a commercial or courier airline. Similarly, Webb's condition forecloses his employment only in the specialized niche of Choate psychologist, which requires interaction with potentially violent and/or infectious patients. Other counseling positions are certainly not foreclosed.
Therefore, to overcome Choate's summary judgment motion, Webb would have had to provide some evidence that would create a genuine issue of material fact as to whether his impairments "substantially limited [him] from employment generally." Skorup, 153 F.3d at 514 (citing

Byrne, 979 F.2d at 565). This has not been shown. Without this evidence, we conclude that Webb is not "disabled" within the meaning of the ADA.

### D. "Qualified individual" under the ADA

Even if Webb were disabled as defined under the ADA, he failed to create a genuine issue of material fact as to whether he is a qualified individual with a disability under the ADA. As recited, a qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position such individual holds or desires." 42 U.S.C. sec. 12111(8). There is no violation of the ADA if Webb cannot perform the essential functions of his job. See Miller v. Illinois Dept. of Corrections, 107 F.3d 483, 485 (7th Cir. 1997). Webb is not a qualified individual because he cannot perform the essential functions of the position of Psychologist I.

Choate is entitled to define the essential functions of the job as Psychologist I. See 42 U.S.C. sec. 12111(8); Webster v. Methodist Occupational Health Centers, Inc., 141 F.3d 1236, 1238 (7th Cir. 1998). Choate has shown that direct interaction with patients is an essential facet of Psychologist I. Webb contends that "intentional" interaction with violent and/or infectious patients is not an essential function of the job. He claims that he could perform his job if he could avoid "known" violent and/or infectious patients. Webb explains that he is willing to "accept the risk" of interaction with patients whose violent tendencies and/or illnesses are "unknown" to Choate. Given the extreme working environment created by the patients housed at Choate, Webb's request to restructure his position in this way wholly undercuts the essential functions of the job.

Unfortunately for Webb, the very essence of working at Choate is to counsel violent and/or infectious individuals. These are precisely the types of patients in need of counseling by psychologists at Choate. Perhaps interacting with patients is not an essential element of the job of psychologist generally, but it certainly is an essential aspect of practicing psychology at a mental health center like Choate. In light of this, we conclude that Webb is not a qualified individual with a disability because he cannot perform the essential function of a Psychologist I at Choate.

### E. "Reasonable accommodation" under the ADA

Moreover, even if Webb had demonstrated that he is a qualified individual with a disability who can perform the essential functions of his job with reasonable accommodations, Webb's request for exemption from intentional interaction with known violent and/or infectious patients was not reasonable. An employer is not required to facilitate every accommodation a disabled employee requests. See Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996). To avoid violation, employers must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual," unless the employer demonstrates that the accommodation would unduly burden the business. 42 U.S.C. sec. 12112(b)(5)(A).

The district court found that Webb's requested accommodations were not reasonable because it would be impossible for a facility such as Choate to constantly monitor the health or potential violent behavior of the patients interacting with Webb. Choate satisfied six of Webb's eight requests, but denied the two dealing with restructuring his job. We repeat that the position of Psychologist I at Choate requires direct interaction with violent and/or infectious patients. A request to avoid contact with these patients is not reasonable. At the core, Webb's requests seem to ask Choate to change the type of patients the facility serves in order to accommodate his impairments. Such a request, of course, is unreasonable.

Further, we recognize Choate's concern over who would be responsible for determining whether and when Webb could interact with a patient. We can easily imagine that the line between patients "known" and "unknown" to be violent and/or infectious would be difficult to establish during a typical day at Choate. As the district court explained:

But how is the employer, as a practical matter, to monitor or judge the situations which plaintiff claims present the risk of potentially violent behavior or potentially lethal illness? Is the plaintiff to be judge of that or is the employer the final arbiter? And in a situation that is calm and suddenly becomes violent, it seems to the court that other employee's [sic] safety is placed at risk if plaintiff is compelled to step aside and wait for someone else to deal with it. This situation is rife with potential additional controversy.

Such an accommodation would place Choate on the "razor's edge" of being sued under the ADA for denying Webb's request or eventually being sued

for negligence if Webb's health is put in jeopardy by a "known" violent and/or infectious patient. See, e.g., Palmer v. Circuit Court of Cook County, Ill., 117 F.3d 351, 352 (7th Cir. 1997) (citations omitted). Webb's last two requests for accommodation were not reasonable within the meaning of the ADA.

CONCLUSION

We have jurisdiction over this appeal, and we hold that Webb is not a "qualified individual with a disability" within the meaning of the ADA. The district court's grant of summary judgment for Choate is hereby AFFIRMED.

/1 As previously quoted, the July 20th order requested a "brief memorandum stating why this appeal should not be STAYED pending the entry of the order disposing of the [post-judgment] motion. A motion for voluntary dismissal pursuant to Fed. R. App. P. 42(b) will satisfy this requirement." As instructed in Barrow, the language of this order gives counsel a strategic choice between either: (1) submitting a memoranda "explaining" why we have jurisdiction; or (2) voluntarily "dismissing" the appeal. See 977 F.2d at 1102.

As we have warned:

The staff attorneys examine the short record that district courts transmit with the notice of appeal and the jurisdictional statement that Circuit Rule 3(c) requires of all appellants. A quick review catches many problems but inevitably overlooks the solutions to some. Thus the role of the order to file jurisdictional memoranda: the staff identifies what looks to be a problem and asks the lawyers for their views, giving appellant the option of voluntary dismissal if counsel cannot find a solution. After counsel state their views, the legal staff gives the papers to the judges for decision. Counsel who surrender, neglecting research and dismissing appeals when they could have obtained judicial resolution, have only themselves to blame.

Id. at 1102-03.

/2 In his brief, Webb argued that he is also substantially limited in the major life activity of breathing, and that "[d]espite the documentation of plaintiff's significant limitation on the major life activity of breathing, the district court concluded that plaintiff was not a qualified person with a disability because his asthma did not substantially limit his employment generally." The district court opinion addressed only the

major life activity of working. Webb asked this Court to remand the case so that the district court could analyze the major life activity of breathing. We decline this request because Webb did not adequately document this issue. Furthermore, remand is unnecessary because we find that Webb is not a "qualified individual with a disability," and that Choate reasonably accommodated him.