Joseph BARNES, Petitioner–Appellant,

v.

Kenneth R. BRILEY, Warden, Respondent–Appellee.

No. 99–3447.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 9, 2001.

Decided July 10, 2002.

Before MANION, KANNE, ROVNER, Circuit Judges.

## ORDER

Joseph Barnes, convicted of murder and armed robbery in Illinois state court, was sentenced to life imprisonment. He appeals the dismissal of his petition for habeas corpus relief to a federal district court in 1999, which was dismissed as untimely and also as a potentially impermissible successive habeas petition. Barnes appeals, and we affirm the district court decision. Additionally, Barnes asks us to recall our mandate in his prior appeal to this court. We grant that request and recall our mandate in *United States ex rel. Barnes v. Gilmore*, Appeal No. 98–1393.

### I.

On June 15, 1983, a Cook County, Illinois jury found Joseph Barnes, along with a co-defendant, guilty of murder and armed robbery and sentenced him to life imprisonment on the murder charge and a 30–year concurrent prison term for armed robbery. The Illinois Appellate Court affirmed that conviction on February 3, 1989. *See People v. Coleman,* 179 Ill. App.3d 410, 128 Ill.Dec. 401, 534 N.E.2d 583 (1989). On June 1, 1989, the Illinois Supreme Court denied his petition for leave to appeal. *See People v. Coleman,* 126 Ill.2d 562, 133 Ill.Dec. 672, 541 N.E.2d 1110 (1989).

After he failed to succeed on direct appeal, Barnes sought post-conviction relief in Cook County Circuit court, which was denied on February 23, 1990. He appealed that dismissal, and an Illinois Appellate Court affirmed. *People v. Barnes,* 654 N.E.2d 723 (Ill.App.Ct.1992). On October 8, 1993, the Illinois Supreme Court denied Barnes's motion for leave to file a late petition for leave to appeal.

Barnes filed his first petition for habeas corpus relief in federal court in 1997, and, after some question about its timeliness, the district court determined that Barnes had filed the petition in April, just before the applicable statute of limitations expired.[1] Nevertheless, upon the government's motion for reconsideration, the district court dismissed the case as untimely due to the late payment of the $5.00 filing fee. *United States ex rel. Barnes v. Gilmore*, 987 F.Supp. 677, 682 (N.D.Ill.1997). Barnes appealed this dismissal to the Seventh Circuit.

For some reason not readily apparent, this appeal was docketed under three separate numbers: 98–1320, 98–1331 and 98–1393. On February 26 and 27, 1998, this court issued orders in Appeal Nos. 98–1331 and 98–1320, respectively, directing Barnes to file his docketing statement within 14 days. On the same dates, we also issued orders in both cases providing that they would be dismissed as duplicative of Appeal No. 98–1393, unless Barnes showed cause otherwise by March 11. On March 5, this court issued an order requiring Barnes to file a docketing statement in Appeal No. 98–1393 within 14 days. Barnes filed one docketing statement, and it was file-stamped by this court on March 16. In the upper-right hand corner of the page, the docketing statement bore the

hand-written notation "98–1331." According to Barnes, the handwriting is not his own. On March 31, 1998, in accordance with our previous orders to show cause (to which Barnes did not respond), we dismissed Appeals No. 98–1331 and 98–1320 as duplicative of Appeal No. 98–1393. On April 8, 1998, we then issued another order in the remaining appeal, No. 98–1393, directing Barnes to file a docketing statement within 14 days or face dismissal of the appeal. After receiving no response from Barnes, we dismissed Appeal No. 98–1393 on April 29, 1998 pursuant to Circuit Rule 3(c).[2]

On July 1, 1998, referencing Appeal No. 98–1331, Barnes sent a letter to the Clerk of the Seventh Circuit Court of Appeals requesting information on the docketing statement that he allegedly sent the court on February 27, 1998. In this letter, Barnes stated that he had been transferred from the Pontiac Correctional Center to Stateville Correctional Center on March 11, 1998, and feared that he missed some correspondence. Barnes attached another copy of the docketing statement to his letter. The Seventh Circuit's pro se clerk sent a letter back to Barnes, dated July 7, 1998, referring to Appeal No. 98–1331 and stating "I am returning these documents to you unfiled. The mandate of

1. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations period for all habeas proceedings running from certain specified dates. 28 U.S.C. § 2244. Where, as here, the petitioner's state court conviction became final prior to the AEDPA's effective date, the one-year grace period expires on April 24, 1997. *See Newell v. Hanks*, 283 F.3d 827, 833 (7th Cir.2002). Barnes's first habeas petition was received by the district court on May 15, 1997, and, accordingly, District Court Judge Shadur directed him to show cause why his petition should not be dismissed as untimely. Barnes explained that he delivered his habeas papers to the prison authorities on April 22, 1997 (just within the one-year period), but

due to some mishandling they were not delivered to the district court until May 15, 1997. The district court then determined that, according to the "mailbox rule," the effective filing date was the date of delivery to the prison authorities, not the date delivered to the court. *See United States ex rel. Barnes v. Gilmore*, 980 F.Supp. 295, 295–96 (N.D.Ill. 1997).

2. "Failure to file the [docketing] statement within 28 days of the filing of the notice of appeal will be treated as abandonment of the appeal, and the appeal will be dismissed." Cir. R. 3(c)(2).

this court issued on April 22, 1998 which returned the case to the District Court and *closed* the appeal in this court. The only filing we could accept in this appeal at this time would be a *motion to recall the mandate.*" Accordingly, Barnes filed a motion to recall the mandate on August 14, 1998, and on October 28, 1998, this court denied the motion under Appeal No. 98–1331.

On March 9, 1999, Barnes filed a second petition for habeas relief in federal court and this case was assigned to Judge Elaine Bucklo. After giving Barnes an opportunity to state why his petition was not untimely, the district court concluded that the one-year statute of limitations (which, as previously noted, expired on April 23, 1997) barred his claim on its face and dismissed the claim as untimely. The district court also noted that Barnes's petition was arguably a prohibited second or successive petition over which it had no jurisdiction. Additionally, the district court denied Barnes a certificate of appealability, finding that he raised no colorable showing of the denial of a federal right. Barnes appealed and, on October 17, 2000, a member of this court granted Barnes a certificate of appealability, and requested the parties to brief the issue of whether Barnes's petition was in fact an unauthorized successive collateral attack, as well as the four substantive claims raised in his petition.[3] We now turn to the first issue, i.e., whether Barnes's petition is an unauthorized successive petition.

## II.

A "claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." 28 U.S.C. § 2244(b)(1). Likewise, a claim presented

in a second or successive petition that was *not* presented in the first petition must also be dismissed, unless certain circumstances apply. *See* 28 U.S.C. § 2244(b)(2)(A)-(B). If those circumstances apply, however, "[b]efore a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28 U.S.C. § 2244(b)(3)(A). If the applicant has not sought permission, the district court must dismiss the petition under Section 2244(b)(2). *See Nunez v. United States*, 96 F.3d 990, 991 (7th Cir. 1996).

The record before us does not contain Barnes's first habeas petition, and, therefore, we do not know whether he is now seeking to present the same claims. However, even if he is seeking to present new claims, it is undisputed that he did not request permission to file the present petition. These questions and this analysis presuppose that his current petition for habeas relief is a "second or successive" petition under Section 2244(b). Given that we already stated that Barnes filed a previous petition for habeas relief on April 22, 1997, it may seem like a foregone conclusion that his current petition is a "second or successive" one. But, the Supreme Court has held that, where a habeas petition is dismissed for purely procedural reasons, without substantive district court review, a subsequent petition is not a second or successive one within the meaning of 28 U.S.C. § 2254(b). *See Slack*, 529 U.S. at 485–86 ("A habeas petition filed in the district court after an initial habeas petition was unadjudicated on its merits and

---

3. In our certificate of appealability, we asked the parties to brief the substantive issues only insofar as briefing would assist us in determining whether further proceedings are justified under *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

dismissed for failure to exhaust state remedies is not a second or successive petition."); *Stewart v. Martinez–Villareal,* 523 U.S. 637, 643–46, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998) (Court permitted a claim previously raised in a petition and dismissed as premature, but which was now ripe, to be raised in a renewed petition). These decisions were made under pre-AEDPA law, however, the Court stated, "we do not suggest the definition of second or successive would be different under AEDPA." *Slack,* 529 U.S. at 486. Otherwise, "a dismissal of a first habeas petition for technical procedural reasons would bar the prisoner from ever obtaining federal habeas review." *Stewart,* 523 U.S. at 645. Therefore, we must decide whether Barnes's first petition was dismissed for purely technical reasons, in which case it is not really a "first petition."

This circuit has noted that, "[i]dentifying 'second or successive' motions is easy only in the paradigm case—the prisoner files a motion, loses on the merits, exhausts appellate remedies, and then files another motion." *Johnson III v. United States,* 196 F.3d 802, 804 (7th Cir.1999). Our case law, however, reveals not just the paradigm case, but a continuum ranging from a first petition which was dismissed on purely procedural grounds, *see, e.g., O'Connor v. United States,* 133 F.3d 548, 550 (7th Cir.1998) (noting that a petition that is returned as insufficient or dismissed for failure to exhaust state remedies does not count as an initial petition), to the situation where the petition is rejected on the merits, *see, e.g., In re Page,* 179 F.3d 1024, 1025 (7th Cir.1999). *See also Potts v. United States,* 210 F.3d 770, 770 (7th Cir. 2000) (collecting cases and holding that, where petitioner voluntarily withdrew first petition, a subsequent petition is successive because the petition enjoyed and declined his opportunity for a substantive review of the merits).

In this case, Barnes filed his first habeas petition within the applicable statute of limitations, but the district court dismissed it as untimely because he failed to timely pay a $5.00 filing fee. We believe this ground for dismissal falls at the purely technical end of the spectrum, and thus does not qualify as an initial petition. Accordingly, the petition before us is not a prohibited second or successive habeas petition within the meaning of Section 2244(b). *See Stewart,* 523 U.S. at 645 (citing Judge Shadur's potential dismissal of Barnes's petition for failure to pay the filing fee as an example of the kind of technical procedural dismissal that should not bar a subsequent filing).

However, Barnes is not out of the woods. His second (now treated as his first) petition was filed on March 9, 1999. We have already noted that where, as here, the petitioner's state court conviction became final prior to the AEDPA's effective date, April 24, 1996, the one-year grace period to file a habeas petition in federal court expires on April 24, 1997. *See Newell,* 283 F.3d at 833. Accordingly, even though we conclude that Barnes's "second" petition is a actually his "first" petition, on its face, the petition still exceeds the statute of limitations because it was filed almost two years too late, and Barnes does not argue that the petition is timely under some tolling theory. Thus, we affirm the district court's decision dismissing Barnes's current petition as untimely.

In response, Barnes seeks to solve his untimeliness problem in this case by asking us to recall our mandate in his first case which he filed in the district court before the April 24, 1997 deadline, but, according to Barnes, was improperly dismissed by this court based on a docketing glitch. He then requests that we remand

his original petition to the district court for consideration on the merits. We have the inherent power to recall our own mandate, but, as recognized by Barnes's counsel at oral argument, it is an extraordinary remedy. *See, e.g., Patterson v. Crabb,* 904 F.2d 1179, 1180 (7th Cir.1990) (court of appeal has the power to "recall a mandate, in effect reopening the case, without limit of time, although only in exceptional circumstances"). We noted in *Patterson* that such circumstances exist where, "the appellant through judicial error never obtained a hearing of his appeal." *Id.* at 1180. In that case, we erroneously dismissed an appeal based on the absence of a final judgment order required by Rule 58 of the Federal Rules of Civil Procedure, even though there was such an order in the record and it was simply overlooked. *Id.* at 1179. Similarly, a subsequent decision of the Supreme Court calling into question the correctness of the court's judgment may justify the court's recall of its mandate. *United States v. Holland,* 1 F.3d 454, 456 (7th Cir.1993).

The Supreme Court has also emphasized the extraordinary nature of a remedy recalling a mandate. In *Calderon v. Thompson,* 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), the Ninth Circuit had reversed the district court's grant of habeas corpus relief in a death penalty case, and after the Supreme Court denied certiorari, a panel denied a motion to recall its mandate and stay execution. Thereafter, however, a divided en banc panel of the Ninth Circuit, *sua sponte,* recalled its mandate and granted relief as to the death sentence, reasoning in part that, in its prior decision, "[b]ut for procedural misunderstandings by some judges of this court, an en banc call would have been made and voted upon at the ordinary time." *Thompson v. Calderon,* 120 F.3d 1045, 1048 (9th Cir.1997). These misunderstandings included a "mishandled law clerk transition

in one judge's chambers and the failure of another judge to notice that the original panel had issued its opinion in the case." 523 U.S. at 548. The Supreme Court reversed the Ninth Circuit's recall of is mandate stating that the misunderstandings described "constitute the slightest of bases for setting aside the 'deep rooted policy in favor of the repose of judgments.'" *Id.* at 551 (citation omitted). In the interest of promoting finality of judgments, the Court then set forth a strict general rule that "where a federal court of appeals *sua sponte* recalls its mandate to revisit the merits of an earlier decision, denying habeas corpus relief to a state prisoner, the court abuses it discretion unless it acts to avoid a miscarriage of justice as defined by our habeas corpus jurisprudence." *Id.* at 558.

In rendering its decision in *Calderon,* the Supreme Court emphasized the importance of finality and the impact of overturning a conviction that had been exhaustively reviewed by many courts at every level. At the same time, the Court distinguished the case before it from other circumstances where the State "can have little interest ... in preserving a mandate not in accordance with the actual decision rendered by the court." *Id.* at 557. The Supreme Court provided examples of such circumstances, including "the recall of a mandate to correct mere clerical errors ... [or] a case of fraud upon the court ...." *Id.* at 557. Thus, the Court limited the applicability of the general "miscarriage of justice" standard to cases where a Court of Appeals had already rendered one decision on the merits.

■ In this case, we are not being asked to recall our mandate to revisit the merits of our own earlier decision. Rather, Barnes asks us to recall our mandate dismissing his appeal for failing to file a

docketing statement (where, in truth, he had already done so). This is hardly a ruling on the merits or one where the State's interest in finality is paramount. Moreover, unlike the petitioner in *Calderon*, Barnes has had no review of the merits of his claims in federal court. *Id.* at 557.[4] Rather, Barnes's first petition before Judge Shadur was dismissed for a delay in paying a $5.00 filing fee. He did not receive a ruling on the merits, or an opportunity for such a ruling. Moreover, when he took a timely appeal of that dismissal, it was dismissed through what appears to be a docketing mishap on the part of this court. Thus, he has not yet been given his one fair shot to have the merits of his habeas petition heard by a court. *See Potts*, 210 F.3d at 770 ("essential point is that a prisoner is entitled to one unencumbered opportunity to receive a decision on the merits"). We deem this to be an appropriate case, one of exceptional and unique circumstances, in which to recall our prior mandate and we agree to do so, effectively reinstating Appeal No. 98–1393.

Our decision might be different if the State of Illinois were prejudiced (something it does not assert) by this action, *see Patterson*, 904 F.2d at 1180, but we see no such prejudice here. Nor can we accept the State of Illinois's argument that this is not a mere docketing mishap because Barnes failed to abide by the orders of this court. We agree that it is possible that Barnes is not entirely faultless in the docketing morass that occurred in our court. But in areas beyond his control, we cannot tell from the record why his appeal was docketed under three separate numbers or why his docketing statement was filed in one case, and not the other two. More-

over, while we have no real way of knowing whether, when moved from one prison to another, Barnes received the numerous orders emanating from our court, we do know that his letter to this court on July 1, 1998 suggests that he had not received those orders. And, we do know that once he was apprized by this court that the mandate in Appeal No. 98–1331 had been issued, he promptly filed a motion for its recall. We conclude that there is enough uncertainty in the record to create the likelihood that there was error on the part of this court. In light of that uncertainty, Barnes, a pro se litigant who has never received a hearing on the merits, should be given the benefit of the doubt and his day in court. *See Webb v. Clyde L. Choate Mental Health and Dev. Ctr.*, 230 F.3d 991, 997 (7th Cir.2000) (misunderstanding of law or fact by counsel alone insufficient for court to use power to reinstate appeal, but case of misinterpretations by both counsel and the court makes use of power appropriate). *Contrast Barrow v. Falck*, 977 F.2d 1100, 1102–03 (7th Cir.1992) (where defendants dismissed own appeal, fault was their own, and not the result of judicial error, and therefore recall of mandate was inappropriate). Accordingly, we hereby recall our mandate in Appeal No. 98–1393, effectively reinstating the appeal from *United States ex rel. Barnes v. Gilmore*. We now turn to the merits of that appeal.

█ Since Barnes's first petition was dismissed, we have specifically rejected the legal grounds on which Judge Shadur dismissed Barnes's first petition. In *Jones v. Bertrand*, 171 F.3d 499 (7th Cir.1999), we held that, for statute of limitations pur-

---

4. The Supreme Court, in *Calderon*, also noted that a motion to recall the mandate itself can be regarded as a second or successive petition under Section 2244(b), *see* 523 U.S. at 553. *See also Johnson III*, 196 F.3d at 805. How-

ever, as we previously stated, Barnes's "first" petition, dismissed by the district court on purely procedural grounds, was not a first petition, rendering a later filing impermissibly successive.

poses, an inmate's petition for habeas relief need not be accompanied by the required filing fee or an in forma pauperis ("IFP") application, *so long as one or the other is sent within a reasonable time and there is no evidence of bad faith on petitioner's part.* In Barnes's case, in April, 1997, he filed an IFP application with his petition for habeas relief, but the district court found that his request for IFP status could not have been filed in good faith because he had enough money in his account to pay the $5.00 filing fee. He paid the $5.00 fee in July, 1997. *See United States ex rel. Barnes v. Gilmore,* 987 F.Supp. at 682 (N.D.Ill.1997). However, Judge Shadur did not have the benefit of our decision in *Jones v. Bertrand* when rendering his decision. Thus, we are unsure whether his reference to Barnes's lack of "good faith" is equivalent to "bad faith" within the meaning of *Jones v. Bertrand.* Therefore, we hereby vacate that dismissal and remand for further consideration in light of *Jones v. Bertrand.* If Barnes can establish that he has met the requirements of *Jones,* the district court should then consider the merits of his petition for habeas corpus relief.

### III.

For the reasons stated herein, we affirm the district court decision before us because Barnes's petition for habeas relief is barred by the applicable statute of limitations. However, we recall our mandate issued in Appeal No. 98–1393, vacate the district court's dismissal in that case, and remand for further proceedings consistent with this opinion. In so ruling, we have put Barnes back in the position he was in before Judge Shadur dismissed his first petition. We are expressing no opinion on the merits of Barnes's habeas petition it-

self and leave those issues for the district court to explore further.