In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-1977, 00-2493

Antonio S. Contreras,

Plaintiff-Appellant,

v.

Suncast Corporation, an Illinois Corporation,
Thomas Tisbo, John Baunach, Randall Guillotte,
and Michael Hamilton,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 3439--Ann Claire Williams
and Suzanne B. Conlon, Judges.

Argued November 30, 2000--Decided January 3, 2001

   Before Flaum, Chief Judge, and Easterbrook and Rovner,
Circuit Judges.

   Flaum, Chief Judge.  Antonio Contreras was
injured in a forklift accident while employed by
Suncast. After repeated violations of Suncast's
safety protocols, work attendance policies, and
acts of insubordination, Contreras was dismissed
by the company. Contreras thereafter filed suit
alleging a multitude of claims, primarily
revolving around the assertion that Suncast had
discriminated against him in violation of both
Title VII of the Civil Rights Act of 1964, and
the Americans with Disabilities Act ("ADA"). The
district court granted Suncast summary judgment
on all of Contreras's claims, denied Contreras's
cross-motion for partial summary judgment and
dismissed Contreras's remaining state law claims.
The court also awarded Suncast a partial bill of
costs. Contreras now appeals both the summary
judgment determinations as well as the award of
costs. For the reasons stated herein, we affirm.

I.  BACKGROUND

   Antonio Contreras, born in Monterrey, Mexico, is
a naturalized citizen of the United States.
Beginning in November of 1994, Contreras was
employed as a forklift operator for Suncast

Corporation ("Suncast"), a manufacturer and distributor of lawn and garden equipment. During Contreras's employment stint, Thomas Tisbo was Suncast's President, Michael Hamilton was the Vice President, John Baunach was the Manager of Human Resources, and Randall Guillotte was a Production Flow Supervisor responsible for supervising forklift drivers.

Contreras's physical problems began on June 21, 1995, when he was injured on the job in a forklift accident. Contreras filed a workers compensation claim, and as a result of his injuries, was instructed by his physician not to drive a forklift for more than four hours a day and to spend the remainder of the day on light work duty. Suncast complied with these restrictions though Contreras argues that Suncast's accommodations were inadequate. On December 18, 1995, Contreras was again injured when he stood up quickly and struck his head on a metal rack after hearing Guillotte call out his name. Contreras's work limitations became permanent on January 12, 1996.

Contreras's disciplinary problems began on July 20, 1995, when he was given a verbal, followed by a written warning for violating forklift safety procedures. On November 7, 1995, Guillotte observed Contreras and two co-workers violating forklift safety rules. Guillotte met with the three as a group and gave each of them a copy of the safety rules to review. As Guillotte walked away from the meeting he heard Contreras say "chingado," from which he understood Contreras to be calling him a "motherfucker." Contreras maintains that what he actually uttered was "vamanos a la chingada," an idiom for "let's get the hell out of here." Regardless, Guillotte gave Contreras a verbal warning for his insubordination. Contreras also repeatedly violated Suncast's attendance policies. Between January 3, 1996, and February 8, 1996, Contreras violated attendance policies seven different times and was caught falsifying a Suncast time card in an attempt to cover up one of these violations. When Contreras was caught falsifying the time card, he was suspended. At that point, he filed an EEOC charge claiming that Suncast was discriminating against him on the basis of national origin. On February 12, 1996, Contreras violated the company attendance policy for an eighth time in a little over one month. Having been progressively disciplined for these multiple offenses, Suncast discharged Contreras on February 13, 1996. The following day, at the behest of Contreras's union representative, Suncast offered to reinstate Contreras. Contreras informed the company that he was not interested in returning to work, but that he wished to

pursue legal action instead.

Contreras brought suit in the district court raising a litany of claims against Suncast. Specifically, Contreras alleged (1) that he was wrongfully terminated and not given a light work duty in violation of Title VII of the Civil Rights Act of 1964; (2) that Suncast retaliated against him by discharging him, after he filed an EEOC charge, in violation of Title VII; (3) that he was not reasonably accommodated after his injury and discriminated against for requesting accommodations, in violation of the ADA; (4) that Guillotte assaulted him by intentionally causing him to bang his head on the metal rack; (5) that Suncast was negligent in supervising Guillotte and directing Guillotte to stalk and assault Contreras; (6) that Suncast wrongfully discharged him after he filed a workers compensation claim. On March 15, 2000, the district court granted summary judgment to Suncast on all federal claims, and dismissed the state law claims without prejudice. Those state law claims have been refiled in the district court under 28 U.S.C. sec. 1332. On May 22, 2000, after this case had been reassigned, the district court partially granted Suncast's Bill of Costs. Contreras appealed the grant of summary judgment along with the judgment granting the Bill of Costs. These two appeals have been consolidated and we now address them.

II.  DISCUSSION
A.  Contreras's Title VII Claims

Contreras contends that the district court erred in granting summary judgment to Suncast on his national origin discrimination claims under Title VII. We review a district court's grant of summary judgment de novo, viewing the facts and drawing all reasonable inferences in the light most favorable to the nonmoving party. See Stockett v. Muncie Indiana Transit Sys., 221 F.3d 997, 1000 (7th Cir. 2000). Summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see James v. Sheahan, 137 F.3d 1003, 1006 (7th Cir. 1998).

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. sec. 2000(e)-2(a)(1). A plaintiff may meet his burden of proof under Title VII by offering either direct proof of

discriminatory intent or by proving disparate treatment through the indirect, burden-shifting method outlined by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Stockett, 221 F.3d at 1000-01; Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 347 (7th Cir. 1997). In this case, Contreras offers no direct proof of discrimination but attempts to meet his burden through showing discriminatory treatment under the McDonnell Douglas test.

Under the McDonnell Douglas burden shifting method, the plaintiff must raise an inference of discrimination by offering sufficient evidence to make out the prima facie case. Pafford v. Herman, 148 F.3d 658, 665 (7th Cir. 1998). To establish a prima facie case under McDonnell Douglas, the plaintiff must demonstrate that (1) he belongs to a protected class; (2) he performed his job satisfactorily; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside of his protected class more favorably. See Stockett, 221 F.3d at 1000-01; Plair, 105 F.3d at 347. If a plaintiff is able to make the prima facie showing, there is a presumption that the plaintiff was discriminated against, and the employer must come forward with a legitimate non-discriminatory reason for the employment action. See McDonnell Douglas, 411 U.S. at 802. At this stage, the employer need not prove that it was actually motivated by the proffered reason. Rather, an employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 257 (1981). Once the defendant has met this burden of production, the plaintiff must prove by a preponderance of the evidence that the reason offered by the defendant is merely a pretext for discrimination. Id. at 253. While the McDonnell Douglas approach is often called a "burden shifting" method of proof, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id.

The majority of Contreras's argument on his Title VII claims is devoted to showing that similarly situated individuals outside the protected class were treated more favorably than Contreras. In fact, Contreras goes so far as to frame the issues for review as if the "similarly situated" prong of McDonnell Douglas is the only burden keeping him from establishing the prima facie case, and thus the dispositive issue in determining whether the district court decision should be reversed. We are unpersuaded. Perhaps

Contreras's strategy is a recognition that he cannot establish the prima facie case. The district court granted Suncast summary judgment, finding that Contreras could not meet both the second and fourth prongs of the McDonnell Douglas prima facie case; namely that Contreras could not prove that he was meeting Suncast's legitimate expectations and that he could not show that similarly situated non-Hispanic employees received more favorable treatment. Contreras's failure in either of these regards is sufficient to uphold the district court's grant of summary judgment. Thus we proceed by analyzing first whether Contreras was meeting the legitimate expectations of Suncast.

Contreras was employed by Suncast as a forklift operator. On November 14, 1994, Contreras acknowledged receiving a copy of Suncast's Work Rules and General Plant Safety Rules. Those Rules establish two groups of violations. Group A violations, which the company believes to be so serious that a first offense may call for immediate discharge, include falsifying information on company records (Rule A-4), insubordination (Rule A-7), and taking extended rest periods (Rule A-9). Group B violations are considered less serious, and call for a tiered response, beginning with a verbal warning, followed by a written reprimand, suspension and finally discharge. Relevant to our inquiry, Group B violations include failing to obey safety rules (Rule B-7), and repeated unexcused absences (Rule B-11). Though we recognize that coming to work, not falsifying documents, and not being insubordinate, are usually implicit expectations that an employer has for his or her employees, by putting these requirements in Suncast's Work Rules, there can be no claim that these were not legitimate expectations of the company. See Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1090 (7th Cir. 2000), ("At the outset, this Court's inquiry into the issue of legitimate expectations is more aptly characterized as simply bona fide expectations, for it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers. In other words, so long as the employer's employment expectations are in good faith, without fraud or deceit, we only determine if the employee met them.") (internal citations omitted). The uncontradicted evidence is that Contreras did not meet those bona fide expectations. Contreras was repeatedly cited for operating his forklift in an unsafe manner. Furthermore, within less than six weeks, Contreras violated the company's work attendance guidelines on no less than eight occasions. On one such occasion, Contreras doctored company records in an attempt to conceal his infraction. Finally, the "chingado incident,"

as Contreras refers to it, shows a level of insubordination that in itself was worthy of dismissal./1 All these facts show that Contreras was not meeting the legitimate expectations of Suncast, and Contreras has not presented evidence to demonstrate the existence of a genuine issue of material fact on the subject./2 Had he done so he could have moved on to the next stage of analysis. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997)./3 However, as we have stated, should a plaintiff fail to establish that he was meeting the employer's bona fide expectations, he is not entitled to present his case to the jury and we need not proceed to the remaining steps of the McDonnell Douglas framework. See Espo Eng'g Corp., 200 F.3d at 1090; see also Coco, 128 F.3d at 1179 ("If the plaintiff has other evidence of discrimination, well and good; but if he has nothing else, and is therefore totally reliant on the McDonnell Douglas formula, he is out of luck if he can't show that he was meeting his employer's legitimate expectations."). Given that Contreras cannot make out the prima facie case under the approach, we find no need to examine whether similarly situated individuals not of his protected class were treated differently. Because Contreras had to prove that he was meeting the legitimate expectations of Suncast in order to make the prima facie case for both his Title VII discriminatory discharge and discriminatory job assignment claims, and he has failed to do so, we affirm the district court's rulings in both of these matters.

B.  Contreras's ADA Claims

   Contreras claims that the district court erred in granting summary judgment to Suncast on his failure to reasonably accommodate claim. Once again, the bulk of Contreras's argument is devoted to a discussion of similarly situated individuals. Specifically, his brief suggests that "[t]he fact that only Contreras of all these people was fired allows the inference that his discharge was related to his requests for accommodations."/4

   The ADA prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability. Sutton v. United Air Lines, Inc., 527 U.S. 471, 477 (1999). Specifically, the ADA provides that no covered employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42

U.S.C. sec. 12112(a). Section 12112(b) of the Act defines the different ways in which discrimination under section (a) might occur. Relevant to our inquiry, the ADA states that "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee" is considered discrimination, "unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. sec. 12112(b)(5)(A). Thus, in order for a plaintiff to recover under the ADA for an employer's failure to reasonably accommodate, that plaintiff must first show: (1) that he was or is disabled as defined by the Act, (2) that his employer was aware of the disability, and (3) that he was qualified for the position in question. Best v. Shell Oil Co., 107 F.3d 544, 547-48 (7th Cir. 1997). To qualify for the position in question, the plaintiff must show that he is physically capable of performing the essential functions of the position, with or without an accommodation, and that he meets the legitimate educational, training, experience, and other requirements set by the employer for the position. See Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 676 (7th Cir. 1998).

Under the ADA, a disability is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. sec. 12102(2). Contreras contends that because of his injuries, he was substantially limited in the major life activities of working as well as reproduction/engaging in sexual relations. We examine each of these claims in turn.

As it has been defined, "substantially limits" means that the person is either unable to perform a major life function, or is significantly restricted in the duration, manner, or condition under which the individual can perform a particular major life activity, as compared to the average person in the general population. See 29 C.F.R. sec. 1630.2(j). When we discuss the major life activity of working, "substantially limits" means the individual is significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes. Webb v. Choate Mental Health and Dev. Ctr., 230 F.3d 991, 998 (7th Cir. 2000). "Thus an individual is not substantially limited in working just because he or she is unable to perform a particular job for one employer, or because he or she is unable to perform a

specialized job or profession requiring extraordinary skill, prowess or talent;" instead, "the impairment must substantially limit employment generally." 29 C.F.R. sec. 1630.2(j), App. (1999); see Webb, 230 F.3d at 998. As such, Contreras has the burden of presenting evidence to demonstrate that his impairment limited his ability to perform an entire class of jobs. See Skorup v. Modern Door Corp., 153 F.3d 512, 515 (7th Cir. 1998).

   In support of his claim that he is substantially limited in the major life activity of working, Contreras advances that he is unable to lift in excess of 45 pounds for a long period of time, unable to engage in strenuous work, and unable to drive a forklift for more than four hours a day. Taking Contreras's assertions as fact, we fail to see how such inabilities constitute a significant restriction on one's capacity to work, as the term is understood within the ADA. Contreras has not presented evidence that even hints at the notion that he is precluded from a broad class of jobs. Though this precise claim has not found its way into our published case law, we note that other circuits faced with similar sets of facts have found those limitations do not qualify as a substantial limitation on working (and thus a disability under the ADA). See e.g. Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 349 (4th Cir. 1996) (holding as a matter of law that "twenty-five pound lifting limitation-- particularly when compared to an average person's abilities--does not constitute a significant restriction on one's ability to lift, work, or perform any other major life activity"); Aucutt v. Six Flags Over Mid-America, 85 F.3d 1311, 1319 (8th Cir. 1996) (holding plaintiff failed to show he was substantially limited in major life activities where "a 25-pound lifting restriction was the only medical limitation placed upon [plaintiff's] activities"); Ray v. Glidden Co., 85 F.3d 227, 228-29 (5th Cir. 1996) (holding that inability to continuously lift containers weighing on average 44-56 pounds "does not render a person substantially limited in the major life activities of lifting or working"); Wooten v. Farmland Foods, 58 F.3d 382, 384, 386 (8th Cir. 1995) (plaintiff not substantially limited in major life activity of working where plaintiff was restricted to light duty with no working in cold environment and no lifting items weighing more than 20 pounds)./5 Nor have we ever suggested that forklift operation, the specific job Contreras claims he cannot perform for more than four hours, is broad enough to constitute a class of jobs. It was Contreras's burden on summary judgment to show that he could come up with evidence to show he could meet his ultimate

burden of showing an ADA recognized disability. See DePaoli, 140 F.3d at 672. He has not done so. Thus, the district court was correct to reject Contreras's claim that he is substantially limited in the major life activity of working.

Contreras also suggests that he is disabled in the major life activities of sexual reproduction and engaging in sexual relations. These claims are based completely on Contreras's unsupported assertion that while he was able to have intercourse 20 times a month prior to his accident, at present he can only have sex two times a month. That sexual reproduction is a major life activity was acknowledged by the Supreme Court in Bragdon v. Abbott, 524 U.S. 624, 639 (1998) ("In the absence of any reason to reach a contrary conclusion, we agree with the Court of Appeals' determination that reproduction is a major life activity for the purposes of the ADA"). Furthermore, we recognize it may be argued that the Supreme Court may have implied that engaging in sexual relations is a major life activity. See Bragdon, 524 U.S. at 638 ("[r]eproduction and the sexual dynamics surrounding it are central to the life process itself.")./6 However, we find Contreras's attempts to liken his situation to that of Bragdon unconvincing. In Bragdon, the Court considered whether HIV was a physical impairment within the meaning of the ADA. In that case, plaintiff brought an action--under the portion of the ADA that dealt with equal access to public accommodations--against a dentist who had refused to treat her in his office. In reaching the conclusion that an HIV infected woman was substantially limited in her ability to reproduce, the Supreme Court focused on the fact that an infected woman who attempts to reproduce imposed a significant risk of transmitting the disease to any male she has intercourse with as well as to her child during gestation and childbirth. Bragdon, 524 U.S. at 639.

It is apparent that our present situation is readily distinguishable from Bragdon. The Supreme Court's ruling in that matter does not stand for the proposition that a change in the frequency with which an individual can engage in intercourse, as a result of a bad back, constitutes an impairment which substantially limits a major life activity. Rather, the Court based its decision on the undeniable impact that HIV can have on the feasibility of reproduction. Contreras has not shown any significant impact on his ability to reproduce. He has not produced even a scintilla of evidence that he is significantly restricted as to the condition, manner or duration under which he can reproduce as compared to the average person in the general

population. See 29 C.F.R. sec. 1630,2(j)(1). In addition, even if we assume that engaging in sexual relations is a major life activity, Contreras has not substantiated his claim of sexual difficulties with any documentation or testimony beyond a general assertion that the frequency with which he has relations has decreased. Such a bald declaration, without anything more, cannot create a genuine issue of material fact as to Contreras being disabled that would preclude summary judgment. Therefore, we find that it was appropriate to grant Suncast summary judgment on these ADA claims.

C. Contreras's Claims of Retaliatory Firing Under Title VII and the ADA

Contreras argues that his termination by Suncast constitutes an act of retaliation, prohibited by both Title VII and the ADA. Specifically, Contreras puts forth that the only reason he was terminated was because Suncast wished to punish him for requesting accommodations and filing an EEOC complaint. Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. sec. 2000e-3(a). Similarly, the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. sec. 12203.

In order to prevail on a claim of retaliation, a plaintiff must either offer direct evidence of retaliation, or proceed under a burden-shifting method. See Smart v. Ball State Univ., 89 F.3d 437, 440 (7th Cir. 1996). Since Contreras has offered no direct evidence of retaliation, he must make the prima facie case for discriminatory retaliation. Under both Title VII and the ADA, the prima facie case requires that Contreras prove (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal connection between the two events. Id. Once the prima facie case is established, the burden shifts to Suncast to articulate a legitimate and nondiscriminatory reason for its actions which Contreras must show to be a pretext for unlawful retaliation. Rennie v. Dalton, 3 F.3d 1100, 1108-09 (7th Cir. 1993).

Contreras claims that he was terminated on February 13, 1996 in retaliation for filing his EEOC charge on January 18, 1996. In that charge, Contreras claimed that defendants harassed him on the basis of his national origin and denied him reasonable accommodations. Yet, Contreras has presented nothing more than temporal proximity in support of his causal connection argument. "Timing may be an important clue to causation, but does not eliminate the need to show causation." Bermudez v. TRC Holdings, Inc., 138 F.3d 1176, 1179 (7th Cir. 1998) (internal citation omitted). We have held that absent other evidence of retaliation, a temporal relation is insufficient evidence to survive summary judgment. Gleason v. Mesirow Financial, Inc., 118 F.3d 1134, 1136 (7th Cir. 1997). The evidence shows that Contreras was terminated after a series of unexcused absences and acts of insubordination. He has done nothing to establish that his filing of an EEOC charge or request for accommodations even factored into Suncast's decision to dismiss him. In fact, the pattern of events suggests that the complaint and request for accommodations were non-factors in his dismissal. Therefore, we agree with the district court that Contreras has failed to make the prima facie case for retaliation for both Title VII and ADA purposes.

D.  Contreras's Motion for Summary Judgment

Contreras filed a cross-motion for partial summary judgment in this matter, claiming that Suncast's accommodation policy is a per se violation of the ADA. The district court determined that because Contreras was not a qualified individual with a disability, he did not have Article III standing to challenge Suncast's accommodations policy as facially invalid. Contreras suggests that the district court's opinion is inconsistent, in that it found Contreras to be disabled while at the same time denied him standing under the ADA. First, as we stated above, we do not read the district court's opinion to have determined the disability issue conclusively. The court did not make the requisite analysis that would be necessary in order to find one disabled under the ADA, but rather assumed "for the purposes of [the summary judgment] motion . . . that Contreras is disabled under the ADA." Secondly, as the court below noted, even presuming that Contreras is disabled, that is not the only hurdle he must pass in order to have standing to challenge Suncast's accommodations policy. The ADA, by its language, protects qualified individuals with disabilities from discrimination in employment. 42 U.S.C. sec. 12112(a). A "qualified individual" with a disability is one who with or without reasonable

accommodation, is able to perform the essential functions of his job. The district court determined that Contreras had failed to establish that he was a qualified individual with a disability under the ADA, in that he did not present evidence that he was both disabled and able to perform the essential functions of his forklift driver job with reasonable accommodations. Thus, the court believed that Contreras could not have established injury in fact as is required for Article III standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

We agree with the district court's interpretation that Contreras does not have standing to challenge Suncast's accommodation policy, in that he is not a qualified person with a disability, the type of individual protected by the relevant portions of the ADA. See e.g., Stuckey v. City of Naperville, No. 97 C 7037, 1998 WL 173298 at *4 (N.D. Ill. April 7, 1998) ("Stuckey focuses his attention on a claim that the City's disability policy is a 'per se violation of the ADA' and . . . inexplicably overlooks the fact that he is without standing to contest the City's policy if he is not a qualified individual with a disability under the ADA. In other words, the potential illegality of the City's policy does not automatically allow Stuckey to proceed with his claim under the ADA."). Contreras's impairment did not bring him within the gamut of those who could challenge the legality of Suncast's accommodations policy, and the fact that he is no longer employed by the company means that there is no risk that he will ever suffer an injury as a result of the policy. Therefore, we affirm the district court's decision finding Contreras lacked standing to challenge Suncast's accommodations policy.

E.  Contreras's Remaining Claims
   Finally, we note three additional arguments raised by Contreras. Though Contreras devoted the majority of his oral argument to these claims, we find them unconvincing and therefore will dispose of them without much elaboration. Contreras's first of these contentions is that the district court abused its discretion by allowing Suncast to resubmit four affidavits to cure the procedural defect that they had been originally notarized by Baunach, a party to the lawsuit. Contreras has presented no evidence or case law to support the idea that the district court's act of allowing Suncast to replace the invalid affidavits with a disinterested notary's signature constitutes "a decision that no reasonable person could agree with--a ruling that is fundamentally wrong." Roy v. Austin Co., 194 F.3d 840, 843 (7th Cir. 1999). We find no error

in the district court's actions, and certainly none requiring reversal in this matter.

Secondly, Contreras finds error in the district court's decision to dismiss his remaining state law claims without prejudice after the court granted Suncast summary judgment on all federal claims. According to the supplemental jurisdiction statute, a district court "may decline to exercise supplemental jurisdiction" over pendent state law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. sec. 1367(c)(3). "A decision to relinquish pendent jurisdiction before the federal claims have been tried is, as we have said, the norm, not the exception, and such a decision will be reversed only in extraordinary circumstances." Disher v. Info. Resources, Inc., 873 F.2d 136, 140 (7th Cir. 1989). Here, given that Contreras has refiled these state law claims in federal court, invoking diversity jurisdiction, we fail to find any extraordinary circumstances that would even approach suggesting that the court, in dismissing the claims, abused its discretion.

Lastly, Contreras suggests this case was improperly transferred to Judge Conlon (who rendered the decision on costs), and that therefore the award of costs should be nullified. After summary judgment was granted, this case was transferred from Judge Williams to Judge Conlon, on account of Judge Williams' elevation to this Court. Pursuant to Local Rule 40.1(f), which Contreras cites but inexplicably ignores, cases on the calendar of a leaving judge shall be reassigned under the direction of the Executive Committee. On March 3, 2000, the Executive Committee ordered as follows: "IT IS HEREBY ORDERED that theClerk [sic] of the Court reassign the above-captioned case by lot to the calendar of an active judge of this court in accordance with the Rules." Given the above-cited local rule and the language of the reassignment order, we do not understand how Contreras could claim that this case was improperly transferred. The issue of costs in this matter was decided by an impartial Article III judge, and to the extent that Contreras's argument implies that the district court circumvented local rules in this regard, we categorically disagree.

III.  CONCLUSION

For the foregoing reasons, we Affirm the decision of the district court.

/1 Contreras argues on appeal that since summary

judgment requires that we draw all reasonable inferences in favor of the nonmoving party, in this instance Contreras, that we must accept as true his version of the chingado/vamos a la chingada episode. However, it is irrelevant for our purposes which version is accurate. Either way, Contreras's words evince an attitude of actual and perceived insubordination that factored into his dismissal.

/2 In his brief, Contreras refers to this checkered employment record as a "series of minor disciplinary write-ups." We view that characterization as extremely generous.

/3 Although the evidence is uncontradicted that Contreras was not doing the job for which he had been hired, if he could show that, even so, it was his national origin that induced the defendant's adverse employment actions, he might have had a case. For it is not a defense to a discrimination case that the plaintiff should have been fired, if he would not have been fired had it not been for discriminatory animus. McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995); Dranchak v. Akzo Nobel Inc., 88 F.3d 457, 461 (7th Cir. 1996). But that would be a case in which the plaintiff had direct evidence of discrimination and was not dependent on the McDonnell Douglas burden shifting formula. If the plaintiff has no direct evidence of discrimination and is therefore confined to the formula, he must prove that he was meeting (or at least that there is a genuine issue of whether he was meeting) his employer's bona fide expectations, before he can force the employer to produce the reasons for why he was fired or otherwise subjected to adverse action. He cannot get anywhere in such a case merely by trying to prove that he was fired for a reason unrelated to his deficiencies. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993). For such evidence to defeat summary judgment, the plaintiff must have made out a prima facie case under McDonnell Douglas. See Coco, 128 F.3d at 1179-80. Because Contreras has failed to do this, his present attempt to use comparisons to similarly situated individuals in order to prove discrimination is inappropriate.

/4 Even assuming arguendo that Contreras's similarly situated individuals were not fired from Suncast, we are puzzled at how this fact relieves Contreras from the burden of establishing an ADA failure to reasonably accommodate claim. However, we will read Contreras's argument as a broad challenge to the summary judgment decision against him on the ADA claims, and address the actual relevant issues.

/5 We note, however, that there is a line of Seventh Circuit case law which could be read to suggest an opposite result. While Contreras has chosen not to rely on these cases, we believe it important to identify these cases and explain why they are inapplicable to these circumstances. In DePaoli v. Abbott Lab., Inc., 140 F.3d 668 (7th Cir. 1998), Best, and Cochrum v. Old Ben Coal Co., 102 F.3d 908 (7th Cir. 1996), we found that the plaintiffs had produced enough evidence to survive summary judgment on the issue of whether they were disabled under the ADA because of their substantial limitations in the major life activity of working. But what is significant about these cases is the court's emphasis on the breadth of the restrictions placed on the plaintiffs and their doctors' recommendations concerning how their respective injuries would affect their ability to obtain other employment. See DePaoli, 140 F.3d at 673 (evidence showed that plaintiff's injury precluded her from virtually any job requiring repetitive movement of the hand); Best, 107 F.3d at 548 (doctor advised that plaintiff should "find another line of work" due to his knee injury); Cochrum,102 F.3d at 911 (nature of plaintiff's shoulder injury and doctor's broad restrictions indicated that plaintiff could be disqualified from a broad range of jobs). In contrast, Contreras's restrictions are quite specific and he has offered no evidence--other than the restrictions themselves--to show that his back injury limits his ability to engage in a class of jobs.

/6 The district court, for purposes of the summary judgment motion, assumed that Contreras was disabled within the terms of the ADA because of his proposed sexual intercourse limitations, and found his claim lacking for other reasons. We note that notwithstanding the Ninth Circuit's decision in McAlindin v. San Diego, 192 F.3d 1226, 1234 (9th Cir. 1999), this Court has not established a rule that sexual relations are a major life activity for ADA purposes. In this instance, resolution of that issue is not required in order to agree that summary judgment for Suncast was appropriate. Therefore, we will not address the issue of whether sexual relations is a major life activity and instead we will proceed to examine whether Contreras has met his other burdens in establishing a claim of failure to reasonably accommodate under the ADA.