In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4326

DOREE STEIN,

Plaintiff-Appellant,

v.

JOHN ASHCROFT, United States Attorney
General, and IMMIGRATION AND NATURALIZATION SERVICE,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 2393--Blanche M. Manning, Judge.

Argued November 5, 2001--Decided March 21, 2002


   Before COFFEY, ROVNER and EVANS, Circuit
Judges.

   COFFEY, Circuit Judge.  Plaintiff-
Appellant Doree Stein is employed by the
Immigration and Naturalization Service
(INS) Chicago District Office as a
District Adjudication Officer (DAO).
Stein brought suit against her employer
alleging that the defendants failed to
accommodate her disability in violation
of the Rehabilitation Act of 1973, 29
U.S.C. sec. 794a. The district court
granted the defendants' motion for
summary judgment, and Stein appeals. We
affirm.

BACKGROUND

   Stein began employment with the INS
Chicago District Office as a DAO in 1988.
Her primary job responsibilities were
interviewing applicants for United States
citizenship and generating reports of
those interviews, assisting applicants in
the completion of the necessary forms, as
well as processing completed
applications. Stein's duties were
primarily performed in her office at INS,
but at times she would travel beyond the
confines of the office (to places such as
community centers, libraries, and
churches) anywhere from one to five days
per week to conduct "outreach"
assignments. While working outside the

office, Stein taught applicants about the procedure of becoming a U.S. citizen and conducted interviews. The outreach program required Stein to engage in moderate physical exertion not required in the office, such as standing for long periods, transporting and carrying boxes of files and office supplies, and setting up folding tables and chairs.

In May 1994, Stein was diagnosed as suffering from chronic upper left extremity pain and "myofacial pain syndrome,"[1] as the cumulative result of several injuries (including a car accident and an incident in which Stein was physically attacked). Stein claims that this medical problem made it difficult for her to fully extend her left arm and to lift and carry heavy objects, including the boxes she transported to and from outreach assignments. In June 1994, Stein's treating physician sent a letter to the INS recommending that Stein "not do as much heavy lifting as she had been previously," but added that it was otherwise "acceptable that she goes out into the field for her work." In a subsequent letter to Stein's employer dated October 13, 1994, Stein's doctor amended his recommendation, stating that Stein was "released to sedentary employment . . . . She should not have duties that call her to perform repetitive motions of her left hand more than 33% of the time. She will need to have computer arm rests and equipmentsufficient to minimize the quantity of her typing (i.e. efficient word processing software)." An occupational therapist was brought in to evaluate Stein's work station at INS and made recommendations intending to minimize the stress placed on the left side of her body. Furthermore, it was suggested that she use a properly adjusted "ergonomic" chair with proper posture, and that she position frequently used items in her work area more efficiently. In December 1994, Stein's doctor prescribed the use of a computer "set up in an ergonomically correct position" so as to "decrease the chance of overload to her neck, shoulder, arm, wrist and hand structures."

A month later, in January 1995, Stein's supervisor advised her that she would no longer be assigned to "outreach" duties.

The supervisor explained that the work responsibilities and schedules of other INS employees did not make it feasible for someone to be available to assist Stein with transporting, carrying and lifting boxes of files. Additionally, Stein was informed that INS did not want her to risk further injury by attempting to lift heavy files, move and assemble furniture, or spend long periods sitting in non-adjustable chairs. In spite of the removal of outreach assignments from her duties, Stein's salary, title, and other job responsibilities remained the same. Stein continued to report to work every day and perform the duties required of a DAO.

In March 1995, Stein filed a complaint with the Equal Employment Opportunities Commission (EEOC) alleging that the removal of her outreach duties amounted to discrimination on the basis of a disability. While the EEOC's investigation was in progress, the INS requested a current medical evaluation of Stein's condition, and in April 1996 her physician wrote to INS that Stein was "physically able to perform the duties as a DAO," and was "able to work at a work site for a scheduled eight hour period of time, five days per week." The report further noted that the doctor had not seen Stein for a period of eleven months for any treatment or evaluation, and that it was his "impression that she had been back to work full time without any restrictions in terms of light duty at a desk."

In January 1998, the EEOC issued a decision finding that Stein had not been discriminated against on the basis of a physical disability. Stein filed this action alleging that the INS' decision to discontinue her outreach duties constituted a failure to accommodate her physical disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. sec. 794a. The district court granted the defendants' motion for summary judgment on the ground that Stein had failed to present evidence sufficient to establish that she was "disabled" within the meaning of the Rehabilitation Act. Stein appeals.

DISCUSSION

The issue on appeal is whether the

district court properly awarded summary judgment to the defendants on the grounds that Stein was not "disabled" within the meaning of the Rehabilitation Act of 1973. The district court's grant of summary judgment is reviewed de novo. Sinai Hospital v. Shalala, 196 F.3d 703, 707 (7th Cir. 1999).

Section 505 of the Rehabilitation Act provides a private right of action for federal employees alleging employment-related discrimination on the basis of a disability. Hamm v. Runyon, 51 F.3d 721, 724 (7th Cir. 1995); 29 U.S.C. sec. 794a. To succeed on a claim under the Rehabilitation Act, a plaintiff "must meet the threshold burden of establishing that he is 'disabled' within the meaning of the statute." Roth v. Lutheran General Hospital, 57 F.3d 1446, 1454 (7th Cir. 1995).

For purposes of the Rehabilitation Act, a person is "disabled" if he or she "has a physical or mental impairment which substantially limits one or more of such person's major life activities." Hamm, 51 F.3d at 724; 29 U.S.C. sec. 706(8)(B). Major life activities are defined as "functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." Roth, 57 F.3d at 1454; 29 C.F.R. sec. 1613.702(c).

The parties agree that Stein has a "physical impairment," but disagree as to whether the impairment "substantially limits a major life activity." Stein argues that the district court erred in concluding that her impairment does not substantially limit her major life activity of working, or substantially limit major life activities other than work.

1.  The Major Life Activity of Working.

When the major life activity under consideration is that of working, a plaintiff must demonstrate that "she was significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 506 (7th Cir. 1998);

see also Sutton v. United Airlines, Inc., 527 U.S. 471, 491 (1999) (a plaintiff must show, "at a minimum," that she is "unable to work in a broad class of jobs.") Further, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Sutton, 527 U.S. at 491, quoting 29 C.F.R. sec. 1630.2(j)(3)(i). In other words, "the impairment must substantially limit employment generally." Contreras v. Suncast Corp., 237 F.3d 756, 762 (7th Cir. 2001)./2

   Stein's argument concerning the major life activity of working reflects a misconception of the applicable legal standards, which her appellate brief fails to cite or address. Stein contends that her removal from outreach duties re sulted in lost opportunities for overtime pay, the "loss of merits points necessary for promotion," and a limitation on her ability to socialize and exchange ideas with her fellow DAOs. These allegations, even if true, do not fulfill Stein's burden to demonstrate that her impairment substantially limits her ability to work. We will not search the record in an attempt to make Stein's arguments for her. See Tyler v. Runyon, 70 F.3d 458, 465 (7th Cir. 1995) ("[I]f an appellant fails to make a minimally complete and comprehensible argument for each of his claims, he [or she] loses regardless of the merits of those claims as they might have appeared on a fuller presentation.").

   Stein has failed to present any evidence in support of the theory that her physical impairment precludes her from working in a broad class of jobs. Further, she does not dispute the district court's finding that she continues to hold the same position with INS that she held prior to the onset of her physical impairment, with the same title, salary, and general duties (other than outreach) of a DAO. Stein's inability to lift and carry heavy boxes of files to the extent necessary to perform her duties outside the office does not rise to the level of a restriction on her ability to work in a broad class of jobs. Contreras v. Suncast Corp., 237 F.3d 756, 763 (7th Cir. 2001) (holding that the existence of a physician-imposed lifting restriction is

insufficient to establish that an individual is precluded from working in the "broad class of jobs" necessary to establish the existence of a disability). A plaintiff's inability to perform "one narrow job for one employer" is insufficient to establish a disability. Davidson, 133 F.3d at 506. We are convinced that the district court properly concluded that Stein has failed to meet her burden to demonstrate that her physical impairment substantially limits her major life activity of working, or that she is regarded as having such a limitation. While Stein's impairment may preclude her from lifting and carrying heavy objects on outreach assignments, this is but one single aspect of her duties, and does not overcome her demonstrated ability to successfully perform the numerous other tasks required of her job.


   2.  Major Life Activities Other than Working.

   Stein next argues that her physical impairment has substantially limited "major life activities" other than working. She contends that her impairment has caused "loss of sleep, impaired sexual relations, inability to participate in sports, inability to cut her food and inability to brush her hair." The only support for the existence of these physical limitations is Stein's own affidavit filed with the court, in which she merely states in conclusory fashion that these problems existed, without any factual support, examples, details, nor any indication as to whether the problems are currently extant or resolved, when, where or how the problems developed, how severe they were, or how long they may have lasted. Her affidavit failed to state whether she has ever been diagnosed as suffering from these specific limitations on her functioning or whether she has ever received medical treatment for them. Moreover, Stein's affidavit refers to these alleged problems only in the past tense, stating, "I had trouble sleeping because of [my] injuries," "My sexual relations were hindered," and, "After the attack I could not participate in sports, cut my food, or brush my hair." Furthermore we note that Stein has failed to present any medical records, evaluations or opinions

that support either the past or present existence of these alleged specific limitations on her ability to function, i.e., lost sleep, impaired sexual relations, inability to participate in sports, cut food or brush her hair. The most recent medical evaluation from Stein's treating physician contained in the record states that he had not seen or treated her for eleven months and assumed she had returned to work full time, an eight hour day, five days per week, without any restrictions in terms of office work. The report also states that the doctor was imposing no specific limitations on her activities.

Bald and self-serving assertions in affidavits, unsubstantiated by any documentation or other testimony, are not sufficient to create a material issue of fact as to whether an impairment has substantially limited a major life activity. Contreras, 237 F.3d at 764. Further, the Supreme Court has recently held that a plaintiff who claims that an impairment substantially limits the major life activity of "performing manual tasks" must present evidence that the impact of the limitation is "permanent or long-term," and that "the extent of the limitation . . . in terms of [the plaintiff's] own experience . . . is substantial." Toyota Motor Manufacturing Kentucky, Inc. v. Williams, ___ U.S. ___, 2002 WL 15402 (U.S. 2002) (emphasis added). Stein's case is without merit in that she has failed to present any evidence, medical or otherwise, that her alleged specific limitations (brushing hair, cutting food, etc.) are permanent or long-term (or even currently existing), and the record contains no details of her own experience from which a reasonable fact finder could conclude that her alleged limitations are "substantial." It is the plaintiff's burden on summary judgment to demonstrate that he can "come up with evidence to show he could meet his ultimate burden of showing [a] . . . recognized disability." Contreras, 237 F.3d at 763. Because Stein's claim that her physical impairment substantially limits major life activities "other than working" is not supported by any evidence in the record, the district court properly concluded that Stein failed to meet her burden of demonstrating that she was "disabled" within the meaning of the

Rehabilitation Act.

   The judgment of the district court is
AFFIRMED.

FOOTNOTES

/1 Stein's treating physician testified at his
deposition that "myofacial pain syndrome" is "a
muscle problem where patients have tender and
sore areas over their muscles from using the
muscle repetitively."
/2 These decisions concerned application of the
Americans with Disabilities Act (ADA), but the
ADA's definition of "disability" was taken "al-
most verbatim" from the Rehabilitation Act, and
"Congress' repetition of a well-established term
carries the implication that Congress intended
the term to be construed with pre-existing regu-
latory interpretations." Bragdon v. Abbott, 524
U.S. 624, 631 (1998); Toyota Motor Manufacturing,
Kentucky, Inc. v. Williams, ___ U.S. ___, 2002 WL
15402 (U.S. 2002) (using Rehabilitation Act
regulations to interpret the ADA); see also Hamm,
51 F.3d at 725 (using ADA case law to interpret
the Rehabilitation Act).