Michael H. BLAKELY, Plaintiff–
Appellant,

v.

BRACH & BROCK CONFECTIONS,
INC. Defendant–Appellee.

No. 02–1428.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 1, 2002.

Decided Feb. 21, 2003.

Before COFFEY, RIPPLE, and
KANNE, Circuit Judges.

### ORDER

Brach & Brock Confections, Inc.
("Brach") fired Michael Blakely, an Afri-
can–American inventory analyst, for sub-
standard work performance and insubordi-
nation. Blakely sued, contending that
Brach actually fired him because of his
race and in retaliation for his complaints of
co-worker harassment, in violation of Title
VII, 42 U.S.C. § 2000e, *et seq.*, and 42
U.S.C. § 1981. The district court granted

Brach summary judgment because Blakely failed to establish a *prima facie* case of discrimination or retaliation. We affirm.

## Background

Blakely began working for Brach as a temporary employee in December 1997, and four months later he became a permanent employee and full-time inventory analyst in Brach's Chicago distribution department. Blakely's co-workers trained him for the position, and within a few months he became the sole analyst responsible for coordinating product shipments and deliveries for Brach's Chattanooga, Tennessee warehouse. Blakely's immediate supervisor, Russell Schroeder, managed the seven inventory analysts in the department. Schroeder, in turn, reported to Art Jalove, the department head.

After a few months Schroeder began noticing persistent problems with Blakely's performance, and repeatedly approached him with concerns regarding the accuracy of his work and record-keeping. Despite these conversations Blakely's performance failed to improve. As a result, when Schroeder prepared the analysts' annual reviews, he gave Blakely an overall rating of "needs improvement," the lowest evaluation among the department's seven analysts. Schroeder's evaluation noted Blakely's lack of initiative, his need for constant monitoring, and his inability to complete assigned tasks reliably. Moreover, Schroeder found that Blakely provoked numerous complaints from his co-workers, who remarked on his poor attitude, uncooperative nature, and minimal regard for teamwork.

On September 3, 1998, Jalove approved the evaluation, and Schroeder met with Blakely to discuss its contents. That day Blakely submitted a brief response, disputing Schroeder's assessments. The following week Blakely submitted more detailed comments in a memorandum addressed to Jalove and copied to Schroeder. Blakely disagreed specifically with the criticisms attributed to his co-workers. He claimed that, with the exception of two "uncooperative" and "unprofessional" co-workers, he worked well with everyone. Moreover, Blakely suggested that his productivity and work product suffered because of the "stressful environment" these two co-workers created by calling him "dumb" and "stupid," by failing to provide him with necessary data in a timely fashion, and by interrupting him during meetings. Finally, because he once overheard these same two co-workers suggest that he received preferential treatment because of his race, he attributed all the negative aspects of their interactions to racial animus.

The only other overtly racial incident that affected Blakely during his employment involved a racially offensive e-mail that he received in late July 1998. The message began, "You know you are a GHETTO corporate Negro if the following are true:" and then lists 21 racial stereotypes about Afrian–Americans. A co-worker from Brach's Chattanooga plant had sent Blakely the e-mail, and when Blakely brought it to management's attention, Jalove responded by contacting the sender and her supervisor, and reminding them that corporate policy prohibited use of office e-mail for anything racial or sexual in nature.

In September, Schroeder and Jalove repeatedly approached Blakely with concerns about his poor job performance, which Blakely continued to attribute to his mistreatment by his co-workers. Unsatisfied by his supervisors' response to his complaints, Blakely filed an EEOC charge on November 5, 1998, alleging race discrimination and harassment.

As the months progressed, communication between Blakely and his supervisors deteriorated. Blakely claims that, after

his supervisors learned that he filed this EEOC charge, they retaliated against him by denying him a promised performance review in December; drafting a "poison pen" memorandum that exaggerated problems with Blakely's performance; sending him a notice that admonished him for excessive violations of attendance policies, even though the majority of those listed had been excused; and baiting him into a confrontation by unjustly revoking some of his vacation. On the morning of January 11, 1999, Jalove and Blakely met to discuss Blakely's allegations that the company was stealing his vacation days. But Blakely refused to talk about these allegations, and the meeting ended without resolution when Blakely demanded that Jalove call his attorney. Jalove admits that before this meeting he had no intent to either fire or discipline Blakely, but that afterward he decided to relay his ongoing concerns about Blakely's performance to Dennis Donnellan, Brach's Director of Human Resources. Jalove and Donnellan promptly resolved to put Blakely on probation, and scheduled a meeting with him for that same afternoon.

Blakely's afternoon meeting with Jalove and Donnellan also ended poorly. Jalove began the meeting by outlining Blakely's job responsibilities and the company's performance expectations during the probation period. He then asked Blakely if he understood his duties and was willing to perform the job as described. Blakely responded affirmatively, and Jalove next asked him if there were any grievances he wanted to discuss. Blakely replied that he did not want to discuss his pending EEOC charge without his lawyer present. Blakely then assumed that the meeting had ended and got up to leave. Jalove yelled at him to sit down, and Donnellan warned that it might be considered insubordination if he left the meeting. Blakely claims that neither Jalove nor Donnellan said anything further. According to Blakely, the three

men just stared at each other. Blakely concluded that the meeting was over and walked out. Immediately after Blakely left, Jalove and Donnellan decided to fire Blakely for insubordination and continued poor job performance. Jalove fired Blakely that same day.

Following Blakely's termination, Brach reassigned his duties and responsibilities to the other analysts in the distribution department, including non-African-Americans. Brach never hired a new employee to replace Blakely because a few months later, it eliminated all of the analyst positions in Chicago and relocated them to Chattanooga.

Blakely amended his EEOC charge on January 27, 1999, to add an allegation that he had been terminated because of his race and in retaliation for filing the earlier charge. After receiving a right-to-sue letter, he filed a complaint in federal court alleging those claims, as well as claims of racial harassment, disability discrimination, and intentional infliction of emotional distress. In January 2002, the district court granted Brach summary judgment on all of Blakely's claims.

### Discussion

On appeal, Blakely abandons his harassment, disability, and state law claims, and contends only that the district court erred in granting summary judgment on his claims that he was fired because of his race and in retaliation for filing the original EEOC charge.

### A. Discriminatory Discharge

■ Blakely failed to present direct evidence of race discrimination, and therefore bears the burden of establishing a case of intentional discrimination under the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] Under that *prima facie* test, Blakely must show that he: (1) belongs to a protected class, (2) performed his job according to his employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than other similarly situated employees outside the protected class. *See Brummett v. Lee Enters., Inc.,* 284 F.3d 742, 744 (7th Cir. 2002). The district court concluded that Blakely satisfied the first and third elements, but that Brach was entitled to judgment because Blakely could not satisfy the "similarly situated" element.

Blakely now argues that the district court erred in demanding that he satisfy the "similarly situated" element, because that requirement conflicts with the *prima facie* test applied by this court in *Bellaver v. Quanex Corp.,* 200 F.3d 485 (7th Cir. 2000). In *Bellaver,* this court held that a plaintiff in a single-discharge case, the subject of a "mini-RIF" (reduction in force), could create an inference of discrimination without evidence that a similarly situated employee was treated more favorably, if they could show that employees outside the protected class absorbed the plaintiff's duties. *Id.* at 495. Blakely contends that his own case is governed by *Bellaver,* because he was the only employee fired on January 11, and non-African-American analysts assumed his job responsibilities.

*Bellaver* is distinguishable, however, because its rule applies only to the small subset of employment discharge cases in which an employer fires a single employee, claiming it is a layoff. *See Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 693 (7th Cir.2000). Contrary to Blakely's argument, *Bellaver* does not apply to his case because Brach never

claimed to eliminate his position. Rather, Brach's stated reason for terminating Blakely was his poor job performance and his insubordination. Accordingly, the district court properly required Blakely to demonstrate that he was treated less favorably than similarly situated employees outside the protected class.

Blakley cannot satisfy the "similarly situated" prong because he failed to present evidence of any non-African-American Brach employees who remained employed despite similarly substandard work performance. Moreover, he failed to identify a non-African-American employee guilty of insubordination whom Brach failed to fire. Because Blakely has failed to meet his *prima facie* burden, we conclude that the district court properly granted Brach summary judgment on Blakely's discriminatory discharge claim. *See Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1179 (7th Cir. 1997).

**B. Retaliation**

■ Blakely also argues that the district court erred in determining that he failed to establish a *prima facie* case of retaliation. The *prima facie* case requires proof of three elements: (1) that he engaged in "statutorily protected expression," (2) that he suffered an adverse job-action, and (3) that a causal link exists between the two events. *Contreras v. Suncast Corp.,* 237 F.3d 756, 765 (7th Cir. 2001). If Blakely can establish a *prima facie* case, the burden shifts to Brach to articulate a legitimate nondiscriminatory reason for its actions, which Blakely must then show to be a pretext for unlawful retaliation. *Id.* The district court held that Blakely could satisfy the first two parts of the *prima facie* case—he filed an EEOC

---

**1.** All race discrimination claims, whether brought under Title VII or § 1981, may be analyzed under the burden-shifting approach announced in *McDonnell Douglas. See Logan v. Kautex Textron N. Am.,* 259 F.3d 635, 637 n. 1 (7th Cir.2001).

charge and was subsequently fired—but he could not establish the third element, causation.

### 1. Causation

In order to establish a causal link between his November 1998 filing of the EEOC charge and his January 1999 termination, Blakely must demonstrate that Brach would not have fired him "but for" his protected expression. *See Dunn v. Nordstrom*, 260 F.3d 778, 784 (7th Cir. 2001). To support this causal connection Blakely contends that the filing of his EEOC charge triggered a pattern of criticism and animosity from his supervisors, which when viewed in their entirety supports an inference of retaliation. In particular Blakely notes that: (1) his supervisors cancelled a previously promised performance review in December; (2) they started creating a file on him by drafting a "poison pen" memorandum that exaggerated that problems with his performance and contained numerous unexplained inaccuracies; (3) they charged him with excessive instances of tardiness and leaving work early, without first verifying the accuracy of the attendance records; and (4) they threatened to revoke some of his vacation pay, without justification. Less than seven weeks after this sudden flurry of activity documenting his alleged shortcomings, Blakely notes that he was fired. *See Contreras*, 237 F.3d at 765 (temporal proximity alone is generally insufficient evidence of causal link, but may prove an important clue).

These circumstances, viewed in their totality and most favorably to Blakely, may suggest causality, *see Hunt–Golliday v. Metro. Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1014 (7th Cir. 1997) (pattern of criticism and animosity by supervisors following employee's protected activities supports existence of causal link), but to prevail Blakely must also show that Brach's legitimate non-discriminatory reasons for firing him—poor work performance and insubordination—were pretext.

### 2. Pretext

Because Blakely does not have direct evidence of retaliation, he must prove pretext indirectly by showing that Brach's proffered reasons are not worthy of belief. *See Worth v. Tyer*, 276 F.3d 249, 265–66 (7th Cir.2001). The indirect method requires Blakely to show that: (1) Brach's explanation of Blakely's discharge had no basis in fact; (2) Brach's explanation was not the "real" reason for his discharge; or (3) the reason stated was insufficient to warrant the discharge. *See Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir. 1999). And because Brach articulated two reasons for firing him, Blakely must show that both stated reasons are pretextual in order to withstand summary judgment. *See Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 601 (7th Cir.2001).

#### a. *Poor Performance*

Blakely argues that Brach's charge of poor performance has no basis in fact. In support, Blakely relies on his own self-assessment of his performance and Jalove's admission that prior to January 11, 1999, he had not contemplated disciplining or firing Blakely. Blakely also points to inaccuracies in Jalove's "poison pen" memorandum, which he offers as proof that his supervisors exaggerated his deficiencies after he filed his EEOC charge in November. Blakely argues that this evidence, taken together, reveals that Brach's complaints of poor performance were untruthful.

But Blakely can present no evidence that his job performance satisfied his employer, either before or after his EEOC charge was filed. Before Blakely's filing of the EEOC charge, Schroeder and Ja-

love repeatedly expressed dissatisfaction with Blakely's performance, from his "needs improvement" evaluation to their discussions of his performance in follow-up meetings. Although Blakely contends that this criticism was unwarranted, he introduced nothing to counter it other than his own, subjective self-appraisal. Without more, he fails to create a genuine issue of fact regarding the quality of his performance. *See Dunn,* 260 F.3d at 787; *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere,* 83 F.3d 833, 843 (7th Cir.1996). As for the so-called "poison pen" memorandum, drafted after the EEOC charge was filed, even if Blakely creates a genuine issue of fact as to the accuracy of the document's contents, to establish pretext he must also show that the inaccuracies were deliberate. *See Olsen,* 267 at 602. Blakely argues that Jalove's admission that he did not consider firing Blakely before January 11 provides such evidence. Jalove may have given Blakely time to address his performance concerns before resorting to discipline or termination, but that decision does not render his negative assessment of Blakely's performance untruthful, or Brach's alleged dissatisfaction with Blakely's performance unworthy of belief.

### b. *Insubordination*

Even if Blakely could convince us that Brach's poor performance rationale had no basis in fact, he must still show that Brach's charge of insubordination was also pretext. In support, Blakely urges that he was not insubordinate because he did not walk out of the January 11 meeting until it had finished. He argues that evidence that his supervisors discussed all items on their agenda before turning the meeting over to him, and that they remained silent after ordering him to sit down, establishes that his supervisors had nothing more to say to him. Accordingly, he contends that

he correctly concluded that the meeting had ended when he walked out.

But Blakely's belief that the meeting had ended out bears no relevance on the pretext inquiry, which asks whether Jalove and Donnellan honestly believed that the meeting had not finished and that Blakely lacked permission to leave. *See Sanchez,* 188 F.3d at 746. Blakely contends that his supervisors' state of mind was evident, because they "both admit that they had nothing more to say to Blakely in the meeting at the time he got up to leave and that they ordered Blakely to sit down." Appellant's Br. at 22. Yet a careful review of the record reveals no such admission. Rather, the testimony reflects that neither Donnellan nor Jalove had considered the meeting concluded when Blakely departed. For example, Donnellan explained that the agenda had been covered only in a cursory manner, and required additional discussion. Jalove agreed that the meeting's main objectives remained unaccomplished, including a more in-depth inquiry regarding Blakely's commitment to a higher standard of performance. Moreover, Blakely does not dispute several key facts that suggest that he left a meeting-in-progress without being excused. He admits that he was ordered to sit down, but that he never did so. And he also agrees that he was warned that leaving the meeting could be considered insubordination, but that he left without anyone's express permission.

Blakely may believe that termination was an overreaction to his leaving the January 11 meeting, but that does not mean that Jalove and Donnellan were untruthful when they cited his insubordinate behavior as the reason for his termination. As this court has often explained, it does not sit as a superpersonnel department. *See Nawrot v. CPC International,* 277 F.3d 896, 906 (7th Cir.2002). A bad decision is not necessarily a discriminatory one. *See*

*Aviles v. Cornell Forge Co.*, 183 F.3d 598, 604 (7th Cir.1999). Blakely has offered no evidence that firing an employee for insubordinate behavior was in any way unusual or inconsistent with Brach's policies. *See Mack v. Great Dane Trailers*, 308 F.3d 776, 785 (7th Cir.2002). Accordingly, Blakely has failed to show that Brach's insubordination rationale was pretextual.

### Conclusion

For the forgoing reasons, the district court's grant of summary judgment in favor of Brach is AFFIRMED.