# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-2081

RODNEY KUPSTAS,

*Plaintiff-Appellant,*

v.

CITY OF GREENWOOD,

*Defendant-Appellee.*

———————

**Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 02 C 1163—Richard L. Young, *Judge.***

———————

ARGUED DECEMBER 3, 2004—DECIDED FEBRUARY 15, 2005

———————

Before FLAUM, *Chief Judge,* and EASTERBROOK and
WILLIAMS, *Circuit Judges.*

FLAUM, *Chief Judge.* Plaintiff-appellant Rodney Kupstas
filed suit alleging that defendant-appellee City of Green-
wood violated the Americans with Disabilities Act ("ADA"),
42 U.S.C. § 12101 *et seq.*, in terminating his employment.
Following the district court's grant of summary judgment in
favor of Greenwood, Kupstas appealed. For the reasons
stated herein, we affirm.

## I. Background

In 1992, Greenwood hired Kupstas to be a "truck driver/
laborer" in its street department. According to the city's
"Position Description," truck driver/laborers must be able to

perform a wide rage of duties, including: operating various trucks, equipment, and hand tools in maintaining city streets and clearing them of snow and debris; hauling and spreading road materials; and periodically repairing streets and alleys, including shoveling and spreading road patching materials. In addition, the position requires the "ability to physically perform assigned duties including . . . standing/walking for long periods, lifting/carrying objects weighing over 50 pounds, shoveling, [and] raking." During Greenwood's heavy leaf season, which typically lasts from mid-October through mid-December, crews of truck driver/laborers collect leaves that residents have raked from their yards. Crew members drive a truck from house to house, rake the piles of leaves toward the truck, and use a suction device to draw the leaves into the truck.

After seven years on the job, Kupstas injured his back. Although he was able to continue working on temporary light duty, his condition did not improve, and in June 2000, he underwent outpatient surgery for a herniated disc. Following the surgery, he remained on light duty until his doctor released him for full duty in October 2000.

In early 2001, Kupstas complained to his family doctor, Dr. Qualls, about continuing back pain. On May 25, 2001, Dr. Qualls wrote a letter stating that Kupstas should not shovel or rake, and should not lift more than 40 pounds, describing these restrictions as "permanent." Kupstas gave this letter to Greenwood Street Superintendent Greg Owens who assigned Kupstas to tasks that allowed him to follow Dr. Qualls's restrictions. On August 9, 2001, at the direction of Owens and Human Resources Director Carolyn Gaier, Kupstas saw the city's doctor, Dr. Poplin, who told Kupstas that he should either go back to his doctor and have the restrictions lifted or find another job. Dr. Poplin told Gaier that Dr. Qualls's restrictions were not appropriate but that he could not remove the restrictions ordered by another doctor. During subsequent meetings with Owens and Gaier,

Kupstas said that he could not think of anything that the city could do to accommodate his restrictions. Owens and Gaier made it clear to Kupstas that his job was in jeopardy.

Shortly after seeing Dr. Poplin, Kupstas returned to Dr. Qualls for a reevaluation. On August 18, 2001, Dr. Qualls sent a letter to the city, stating: "[Kupstas] is to remain on a 55-60 pound lifting restriction for the foreseeable future. He is also limited to no more than 2 hours of continuous shoveling or raking and no more than 4 hours of shoveling or raking per day." Thereafter, Gaier and Owens concluded that, although Kupstas could lift the required weight for the truck driver/laborer position, the raking restriction disqualified him. On her own initiative, Gaier contacted other city departments to ask about possible positions for Kupstas. After finding none for which he was qualified, Owens and Gaier terminated Kupstas's employment on August 21, 2001, before the start of leaf season. Kupstas filed this suit, alleging that Greenwood had violated the ADA. He now appeals the district court's grant of the city's motion for summary judgment.

## II. Discussion

Summary judgment is appropriate if the evidence presented by the parties "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review de novo a district court's grant of summary judgment, drawing all reasonable inferences in favor of the nonmoving party. *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002).

Kupstas alleges that Greenwood discharged him in violation of the ADA, under which "[n]o covered entity shall discriminate against a qualified individual with a disability

because of the disability." 42 U.S.C. § 12112(a). The Act defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." § 12111(8). A plaintiff seeking to avoid summary judgment must demonstrate that there is at least a genuine issue of material fact as to whether he is disabled, whether he can perform the essential functions of the position, and whether he has suffered an adverse employment action because of his disability. *Dyke v. O'Neal Steel, Inc.*, 327 F.3d 628, 631 (7th Cir. 2003).

Neither party disputes that the termination of Kupstas's employment was an adverse employment action. In granting Greenwood's motion for summary judgment, the district court held that an issue of fact remained regarding whether Kupstas was disabled under the ADA, but that Kupstas could not show that he was able to perform the essential functions of the truck driver/laborer position. We disagree with the district court as to the first issue and find that the evidence presented cannot support the conclusion that Kupstas was disabled under the Act. Therefore, we need not reach the second issue regarding Kupstas's ability to perform the essential functions of the job. *See Peters*, 311 F.3d at 842 ("In deciding an appeal, this Court may affirm the grant of summary judgment on grounds different from that of the district court" if the grounds "have adequate support in the record and the law.").

The ADA provides the following definition of "disability":

(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Kupstas concedes that at the time

of his discharge he did not have an actual impairment that substantially limited a major life activity. He contends only that he was regarded as having such an impairment.[1] Under the "regarded as" prong, the employer must believe, rightly or wrongly, that the employee has an impairment that substantially limits one or more of the major life activities. *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004). Kupstas alleges that Greenwood regarded him as substantially limited in performing the major life activity of working. The Supreme Court has voiced some reservations, and expressly reserved judgment, about whether working can be a major life activity under the ADA. *See Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200 (2002). We have stated that it can, *see Peters*, 311 F.3d at 843 ("To be sure, working constitutes a major life activity under the ADA and the Rehab Act."), and neither party asks us to reconsider.

Kupstas's primary argument is that he was fired because of the restrictions imposed by Dr. Qualls and not because of an actual inability to perform his job. Such an employment decision would not violate the ADA, however, unless Greenwood believed that the restrictions imposed by Dr. Qualls constituted or revealed an impairment limiting enough to be a "disability *within the meaning of the Act.*" *Tockes v. Air-Land Transp. Servs., Inc.*, 343 F.3d 895, 896 (7th Cir. 2003) (emphasis in original). "[I]f the condition

---

[1] Kupstas briefly mentions that he also had a record of impairment. The district court expressly declined to consider the second prong of the definition of "disability," however, because Kupstas "provided no argument" on the issue. Because he does not challenge the district court's ruling or contend that he has presented sufficient evidence to make a prima facie showing that he had a record of impairment, we do not consider the issue. *See Tyler v. Runyon*, 70 F.3d 458, 465 (7th Cir. 1995) ("[I]f an appellant fails to make a minimally complete and comprehensible argument for each of his claims, he loses regardless of the merits of those claims as they might have appeared on a fuller presentation.").

that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Mack v. Great Dane Trailers*, 308 F.3d 776, 782 (7th Cir. 2002). In other words, unless the city believed that Kupstas had an impairment that substantially limited his ability to perform the major life activity of working, then the city's actions based on a mistaken belief as to Kupstas's abilities do not violate the Act.

The term "substantially limits," like the other terms within the ADA, is "interpreted strictly to create a demanding standard for qualifying as disabled." *Toyota*, 534 U.S. at 197. In the context of working, the Equal Employment Opportunity Commission ("EEOC") has interpreted "substantially limits" to mean "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). It has further indicated that a plaintiff relying on the major life activity of working must present "evidence of general employment demographics and/or of recognized occupational classifications that indicate the approximate number of jobs (e.g., 'few,' 'many,' 'most') from which an individual would be excluded because of an impairment." 29 C.F.R. Pt. 1630, App. § 1630.2(j). Although the Supreme Court has reserved judgment on the weight generally to be accorded the EEOC's interpretation of ADA terms, it has held that if working is determined to be a major life activity under the ADA, a claimant will be required to show "an inability to work in a broad range of jobs." *Toyota*, 534 U.S. at 194, 200 (internal quotations omitted). We have concluded that, except in "rare cases in which the [plaintiff's] impairments are so severe that [his] substantial foreclosure from the job market is obvious," he must present "some evidence of the number and types of other jobs" in the geographic region, from which he would

be excluded because of his perceived impairments. *EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1017-18 (7th Cir. 2001). The impairments must "substantially limit employment generally," *Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002), not merely preclude an employee from performing "either a particular specialized job or a narrow range of jobs." 29 C.F.R. Pt. 1630, App. § 1630.2(j). A plaintiff can never satisfy his burden by showing only that his employer believed that he could not perform a specific job. *Toyota*, 534 U.S. at 200; *Peters*, 311 F.3d at 843.

In *Rockwell*, an employer required all applicants for positions at its plant to undergo a "nerve conduction test." 243 F.3d at 1014. Those who failed the test were denied a job because the employer viewed them as having an enhanced likelihood of developing "cumulative trauma disorders such as carpal tunnel syndrome." *Id.* at 1014-15. The EEOC, on behalf of the rejected applicants, claimed that the employer regarded the applicants as disabled. *Id.* We held that the case could not go to the jury without at least some evidence that the impairment allegedly perceived by the employer would substantially limit the applicants' "ability to meet the requirements of other jobs." *Id.* at 1018.

The evidence presented in this case supports only the conclusion that Greenwood believed that Kupstas was unable to rake or shovel for more than 2 hours continuously or 4 hours in a day and could lift no more than 55-60 pounds. Kupstas admits that, after the modification from 50 to 55-60 pounds, the city no longer was concerned about his lifting restriction and did not believe that it would limit his ability to work as a truck driver/laborer. Furthermore, even if the city had viewed this as an impairment that prevented Kupstas from performing his duties, we have held that more serious restrictions do not substantially limit one's general ability to work. *See, e.g.*, *Peters*, 311 F.3d at 844 (finding no substantial limitation to the ability to perform

the major life activity of working where an employee was unable to lift more than 50 pounds, shovel for more than 30% of a workday, or use of his shoulder for more than 2 hours continuously or 6 hours in a day); *Contreras v. Suncast Corp.*, 237 F.3d 756, 763 (7th Cir. 2001) (finding not even a "hint" that the plaintiff was precluded from a broad class of jobs where he was unable to lift more than 45 pounds, do "strenuous work," or drive a forklift for more than 4 hours in a day).

As to the remaining restrictions, Kupstas has offered no evidence of other jobs that would require him to rake or shovel for more than 2 hours continuously or 4 hours in a day.[2] In fact, in arguing that he could perform the essential functions of the truck driver/laborer position, Kupstas asserted that even the "rake man" on the leaf crew did not have to rake this much. In *Contreras*, we held that "forklift operation" was not alone "broad enough to constitute a class of jobs." 237 F.3d at 763. The class of jobs requiring raking or shoveling for more than 2 hours continuously or 4 hours in a day is undeniably narrow and does not, without more,

---

[2] The district court granted the city's motion to strike the following evidence submitted in opposition to Greenwood's motion for summary judgment: statements in Kupstas's affidavit repeating statements made to him by temporary employment agencies; a series of affidavits of Christine M. Jackson, a law clerk for Kupstas's attorney, stating that she searched various job listings and found titles which appeared to require the "repetitive movements of raking and shoveling and similar repetitive movements including sweeping and digging." Though Kupstas contends that the district court's exclusion of the evidence was "mistaken," he does not appeal the ruling or argue that the district court abused its discretion. *See Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004) ("We review evidentiary rulings for abuse of discretion."). Accordingly, we do not review the district court's ruling or consider the excluded evidence.

indicate Kupstas's "substantial foreclosure from the job market." *Rockwell*, 243 F.3d at 1017. As in *Rockwell*, Kupstas's failure to provide evidence as to a class or range of jobs for which he otherwise was qualified, and from which Greenwood perceived him to be excluded, is fatal to his case.

Kupstas makes several assertions in an effort to show that Greenwood believed that his impairment debilitated him in ways other than limiting his raking and shoveling. Each assertion is either unsupported by the evidence or cannot be the basis for an inference that Greenwood regarded him as disabled.

Kupstas first argues that Greenwood believed that he was unable to perform any jobs requiring tasks "similar" to raking and shoveling, such as mopping and sweeping. This argument fails because Kupstas has offered no evidence that similar physical abilities are needed to perform these tasks, no evidence of the number of jobs in his geographic area which require mopping or sweeping for more than 2 hours continuously or 4 hours in a day, and most importantly, no evidence that the city believed that his restrictions would prevent him from performing these "similar" tasks.

Next, Kupstas argues that Greenwood's insistence that he have his restrictions "lifted" before returning to work shows that Greenwood had a "100% healed rule." He asserts that this in turn shows that the city believed that anyone with physical restrictions is disabled and unable to work. Given Kupstas's admission that the city was no longer concerned about his lifting restriction, no reasonable jury could conclude that the mere fact that Kupstas had work restrictions, or was not 100% healed, was the basis for his termination.

Kupstas argues that the city's offer to reasonably accommodate him supports the inference that it did so because it believed he was disabled. We do not assume that "an

employer offers accommodation only if it thinks that the employee suffers from a substantial limitation in a major life activity." *Cigan*, 388 F.3d at 335. Even if a jury could infer that an employer offered an accommodation because of some perceived impairment, the plaintiff still must demonstrate that the perceived impairment is one that would substantially limit a major life activity. As we have discussed throughout this opinion, Kupstas has not offered any evidence to satisfy this burden.

Kupstas points to evidence that Owens made no attempt to investigate the actual physical demands of the truck driver/laborer position. He contends that, based on this fact, a jury could infer that Owens had decided that Kupstas was disabled. At most, this evidence shows that Owens believed that Kupstas was not able to preform the duties of the truck driver/laborer position. We already have explained that Kupstas cannot meet his burden by showing that Greenwood believed that he could not perform a specific job. *See Toyota*, 534 U.S. at 200; *Peters*, 311 F.3d at 843.

Finally, Kupstas notes that, before his discharge, Gaier contacted other city departments to inquire about possible positions for him. There is some dispute about whether Gaier told Kupstas that there were "no jobs that [Kupstas] qualified for within the City" or that there were no *available* jobs in other departments for which he was qualified. The latter version, advanced by the city, is supported by a conversation with Owens and Gaier that Kupstas secretly recorded, in which Owens explained to Kupstas that he could maintain his seniority if he found another job with the city:

> I mean anything we can do . . . even if another position somewhere else in the city came open . . . that didn't have the requirements of this position, you know— at least your seniority and everything would stay intact . . . . What we were going to even offer you is that if you

found a job within—with the city within a 30 day period, I mean we would even—we would act as if you never left the city. . . . I mean there were several things we were willing to do because—just because of your reputation here. . . . Like I say, you've been a model employee as far as I'm concerned.

Assuming arguendo that a reasonable jury could conclude, despite this evidence, that Gaier told Kupstas that the city believed that he was not physically able to perform any job with the city, it does not follow that the city believed that Kupstas's impairments made him unable to perform a broad range of jobs. Kupstas has not presented evidence of the number, nature, or qualifications of other jobs with the city. Thus, there is no evidence that the city employed workers in a broad range of jobs. Kupstas argues that "[t]he mere fact that Gaier looked for jobs in other departments shows that she thought Kupstas'[s] restrictions [a]ffected his ability to do other jobs." If anything, the reverse is true; Gaier's efforts suggest that she believed that Kupstas would be able to perform other city jobs.

None of Kupstas's attempts to describe his perceived raking/shoveling impairment as more serious than it first appears have created a triable issue. Kupstas has failed to present sufficient evidence from which a reasonable jury could conclude that Greenwood regarded him as having an impairment that rendered him unable to work in a class or broad range of jobs. At most, Kupstas can show that Greenwood regarded him as unable to work in a specific job, the truck driver/laborer position. This belief cannot be the basis of an ADA violation.


### III. Conclusion

The district court's grant of summary judgment in favor of Greenwood is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*