UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued September 19, 2005
Decided October 18, 2005

**Before**

Hon.  KENNETH F. RIPPLE, *Circuit Judge*

Hon.  DIANE P. WOOD, *Circuit Judge*

Hon.  ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-3154

| | |
|---|---|
| JAVIER M. VALADEZ,<br>　　　*Plaintiff-Appellant*,<br><br>　　　　v.<br><br>STEINER CORPORATION,<br>a Nevada corporation, doing business<br>as AMERICAN LINEN,<br>　　　*Defendant-Appellee.* | Appeal from the United States<br>District Court for the Northern<br>District of Illinois, Eastern Division.<br><br>No. 01 C 5726<br><br>Joan B. Gottschall,<br>*Judge.* |

### ORDER

Javier Valadez sued his former employer, Steiner Corporation d/b/a American Linen ("American Linen"), for unlawfully discriminating against him on the basis of his disability, a back injury, and for on-the-job harassment and creating a hostile work environment in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (the "ADA").  After reviewing the facts in a light most favorable to Valadez, the district court concluded that the undisputed facts established that Valadez was unable to perform the essential functions of his position and no reasonable accommodation existed that would allow Valadez to perform the essential functions of his position.  As a result, the district court found that Valadez was not a qualified individual within the meaning of the ADA and granted summary

judgment in favor of American Linen.  Valadez appeals, arguing that American Linen violated the ADA when it failed to accommodate his permanent medical restrictions.  We find that the undisputed facts of this case establish that Valadez is not disabled under the ADA and, therefore, affirm.

## I.  BACKGROUND

American Linen supplies linens to restaurants, banquet halls and hospitals throughout Cook County, Illinois.  In 1988, American Linen hired Valadez as a route driver.  Route drivers were responsible for delivering linens to American Linen's customers and picking up their soiled linens for cleaning.  It is undisputed that the route driver position is a physically demanding job.  The essential functions of route drivers included being capable of continuous heavy lifting throughout the work day and driving 8-12 hours per shift. Often, the bags of soiled linen that route drivers were required to carry from the client site to the truck weighed over 200 pounds.  In 1997, Valadez was promoted to Assistant District Manager ("ADM").  The ADM position involved the same physically demanding tasks as the route driver position, but also required Valadez to supervise other route drivers and address customer complaints.

On May 1, 1998, Valadez severely injured his back while working as a route driver.  His treating physician believed that Valadez's problems were mild, but diagnosed Valadez with a herniated disc, recommended physical therapy and released Valadez to light duty work.  While on light duty, Valadez continually complained of back pain.  According to Valadez, he remained on light duty assignments because he could not drive for extended periods of time and he could not lift the heavy bags of linen.  Eventually, Valadez went on medical leave for his back and another medical condition from September 1998 to June of 1999.  During his prolonged leave, Valadez began seeing a back specialist who diagnosed Valadez with a herniated disk, but cleared him to return to work under certain medical restrictions.  Less than three months after Valadez returned from his medical leave, however, he underwent spinal-fusion surgery which caused Valadez to miss another eight months of work.

After recovering from surgery, Valadez returned to work for the third time in April 2000 with restrictions that he not lift more than 20 pounds or stand for over 45 minutes.  In October 2000, Valadez received a "Functional Capacity Evaluation" ("FCE") to evaluate his ability to function in the workplace. During the test, Valadez was able to walk on a treadmill for a total of 150 minutes, climb a ladder for 30 minutes continuously and push and pull 300 pounds on a four wheel cart.  Based on the results from the FCE, Valadez was cleared for regular duty and returned to work as a route driver in November 2000.

When he returned as a route driver, American Linen allowed Valadez to drive only in eight-hour shifts.  In addition, to help ease him back into the job, American Linen assigned Valadez an assistant to work with him in the truck and placed Valadez on accounts that did not require as much heavy lifting.  Despite

these adjustments, in December 2000, approximately three weeks after returning as a route driver, Valadez allegedly re-injured his back. By early January 2001, Valadez was placed on a permanent 40 pound lifting restriction and instructed to limit his driving to four hours per day. At that time, Valadez asked American Linen for either a permanent light duty assignment, or for American Linen to "restructure" his position to allow him to respond to customer complaints full time and discontinue his route driving responsibilities. American Linen denied both requests. Based on American Linen's refusal to "accommodate" him, Valadez alleges that he was terminated in January of 2001. American Linen argues, however, that Valadez simply stopped showing up for work and was never terminated.

## II. ANALYSIS

The ADA prohibits discrimination "against a qualified individual with a disability." 42 U.S.C. § 12112(a). In order to make out a prima facie case of discrimination under the ADA, a plaintiff must show: (1) that he suffers from a disability; (2) that he is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) that he has suffered an adverse employment action as a result of his disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). On appeal, Valadez claims that American Linen violated the ADA because American Linen refused to accommodate Valadez and his permanent medical restrictions. There is no evidence in the record, however, that Valadez suffered from a disability in January 2001. Accordingly, American Linen was under no obligation under the ADA to accommodate Valadez and his permanent medical restrictions, and the district court properly granted American Linen summary judgment.

In order to establish a disability under the ADA, Valadez can show that either (1) he has a physical or mental impairment that substantially limits him in one or more major life activities; (2) he has a record of such an impairment; or (3) the employer regarded him as having such an impairment. 42 U.S.C. § 12102(2). If Valadez cannot establish one of these categories, then Valadez is not disabled under the ADA and, therefore, not entitled to protection under the ADA even if he can prove that he was terminated because of his medical restrictions. *Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005). The ADA is not a general protection for medically afflicted persons. *Id.* (citing *Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051 (7th Cir. 1997)).

On appeal, Valadez claims that he is substantially limited in the major life activities of walking and performing manual tasks.[1] To be substantially limited in any major life activity, an individual must be so limited that he is impaired in his

---

[1] In ruling on American Linen's motion for summary judgment, the district court did not discuss whether Valadez was disabled under the ADA; instead, the district court ruled that no reasonable accommodations existed.

ability to "perform the variety of tasks central to most people's lives." *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 201 (2002). For an individual to be considered disabled with regard to the major life activity of walking, for example, the limitation on an individual's ability to walk must be permanent or cover a long period of time and must be considerable compared to the walking most people do in their daily lives. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005). In this case, the evidence establishes that Valadez had trouble walking after his initial back injury but before surgery. Particularly, during the time right after his initial injury, Valadez's walking was slow, labored and even painful at times. Valadez's short-term limitation on his ability to walk, however, is insufficient to prove that Valadez was substantially limited in his ability to walk. Valadez still made it to work each day without a walking aid and walked on the job throughout the day as a part of his light-duty assignment.

After back surgery, however, the record reveals that Valadez suffered no further complications affecting his ability to walk. According to his capacity test after surgery, Valadez was able to walk on a treadmill for a total of 150 minutes and climb a ladder continuously for 30 minutes. When viewing these facts in a light most favorable to Valadez, we find that Valadez's ability to walk was somewhat limited before his back surgery, but was not permanent. It did not cover a long period of time and was not considerable compared to the walking most people do in their daily lives.

When addressing the major life activity of performing manual tasks, our central inquiry is whether the individual has an impairment that prevents or severely restricts that individual from doing activities that are of central importance to most people's daily lives permanently or over a long term period. *Sears*, 417 F.3d at 799. The individual must show more than that he is "unable to perform the tasks associated with her specific job." *Id.* Valadez has failed to present us with sufficient evidence or argument that he is or was ever unable to perform any task central to his daily life. There is no evidence that Valadez could not dress himself, feed himself, wash himself, maintain himself or drive himself to work. The only evidence of any restriction is the restrictions Valadez's doctor imposed limiting him to lifting 40 pounds and driving four hours a day. Accordingly, Valadez cannot establish on this record that he is substantially limited in the major life activity of performing manual tasks.

The evidence in this case establishes that Valadez's physical limitations prevented him from working the physically demanding job of a route driver or an ADM. An inability to perform occupation-specific tasks, however, is insufficient to establish a disability under the ADA. *Kupstas v. City of Greenwood*, 398 F.3d 609, 612 (7th Cir. 2005). In our review of the record, we cannot find any evidence to support Valadez's claims that he is disabled under the ADA.

In addition, this circuit has yet to recognize a cause of action under the ADA for harassment or hostile work environment, and we decline Valadez's invitation to

recognize such a cause of action on the facts of this case.  Accordingly, we find that American Linen was under no obligation to provide Valadez any accommodation under the ADA, and the district court was proper in granting summary judgment in favor of the American Linen.

## III.  CONCLUSION

We AFFIRM the district court's grant of summary judgment.