**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 11, 2008
Decided June 23, 2008

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 07-3140

| | |
|---|---|
| RICARDO DELGADO, <br>     *Plaintiff-Appellant*, <br><br> *v.* <br><br> CERTIFIED GROCERS MIDWEST, INC. <br>     *Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. <br><br> No. 06 C 2107 <br><br> Charles P. Kocoras, <br> *Judge.* |

**O R D E R**

Ricardo Delgado sued Certified Grocers Midwest (Certified) alleging discrimination on the basis of a disability in violation of the Americans With Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213, when he was fired after being injured on the job. The district court granted the defendant's motion for summary judgment. Because Delgado has failed to show that he is disabled under ADA, we affirm.

Delgado, who is 41 years old and has a sixth-grade education, began working as a "warehouse picker" at Certified in August 2000. This job required that Delgado work in refrigerated areas of the warehouse, and his job duties included manually lifting and carrying items between 1 and 100 pounds taken from bins located 5 inches to 6 feet off the floor. Throughout Delgado's employment, he was a member of a local union and was subject to the collective bargaining agreement between the union and Certified. In November 2001 Delgado injured his shoulder at work and was taken to the hospital by ambulance. Over the next 3 ½ years, Certified provided him with several leaves of absence and at other times allowed him to work in "light-duty" jobs. Light-duty jobs are temporary jobs created by an employee's supervisor to provide meaningful work within an employee's restrictions during the employee's rehabilitation period. When Delgado first returned to work, he performed a light-duty job for 8 weeks, but when that period ended in February 2002, instead of returning to his regular job he again took a leave of absence because of his injury. This time Delgado did not return to work until 8 months later, when his physician gave him clearance to work without restrictions.

In June 2003 Delgado reinjured his shoulder at work. Nevertheless, over the next two months he continued to work without restrictions while he sought treatment from doctors. In August 2003, however, Delgado's physician again limited him to light-duty work with lifting restrictions for three months. In January 2004 Delgado had surgery on his shoulder and took another leave of absence until May 2004, when he returned to light duty for 7 months. During this light-duty period, Delgado's physician reduced his medical restrictions, allowing him lift 100 pounds so long as he did not lift objects above his head. Delgado continued to perform light-duty work until November 2004, when Certified placed him on a leave of absence after his physician diagnosed him with Carpal Tunnel Syndrome. Soon thereafter, Delgado's physician determined that his injuries would not improve and imposed permanent restrictions that limited him to lifting no more than 50 pounds on occasion and frequently lifting or carrying no more than 25 pounds. Delgado's physician also instructed him to avoid working in chilled environments.

Delgado attempted to return to work in April 2005 and gave Certified a note from his doctor documenting his permanent restrictions. Because Delgado could no longer perform his duties as a warehouse picker, Certified fired him. Delgado did not request that Certified provide him with accommodations that would permit him to do his job, nor did he apply for any other jobs at Certified.

Certified did not have any permanent jobs under the jurisdiction of Delgado's local bargaining unit that he could perform with his physical limitations, and the union does not allow employees to shift outside of their local unit. Since leaving his job at Certified, Delgado has had only one job, which Certified helped him find by providing him with

vocational training, but he left that job because he was not paid on time and because he was required to work beyond his restrictions. His vocational counselor advised him not to mention his work restrictions in job applications and suggested that Delgado discuss his injury in interviews instead. Delgado has received several job offers since then, including an offer to be a forklift driver and two offers to be a baggage handler. But in each case, Delgado failed to notify his would-be employers of his work restrictions. Furthermore, he did not show up for work because he presumed that the jobs would require labor outside his work restrictions.

Delgado then timely filed suit against Certified, alleging that it fired him to avoid its obligation under the ADA to accommodate his disabilities. Certified moved for summary judgment. As part of his response to Certified's motion, Delgado submitted two unusual exhibits. First, he submitted an affidavit from his attorney (he had a different attorney on appeal) describing her "admittedly highly unscientific" internet job search to determine if Delgado's work restrictions significantly hindered his ability to find work, although she did not appear to draw any conclusions from her "study." Appended to this affidavit were 50 pages of internet search results and job descriptions. In addition, Delgado submitted over 150 pages of job applications, fax cover sheets, drug test forms, and response letters from employers, presumably meant to illustrate the extent of his thwarted job search after leaving Certified.

The district court granted Certified's motion for summary judgment. The court found that Delgado had not presented evidence that his physical impairments excluded him from a broad class of jobs and that he therefore was not disabled under the ADA. The court reasoned that Delgado's job offers contradicted his "bare assertions" that his work restrictions prevented him from seeking employment. Moreover, the court noted that Delgado had provided no evidence suggesting that he was ever turned down for a job based on his work restrictions. The court next rejected trial counsel's affidavit as inadmissible scientific evidence under Federal Rule of Evidence 702. The court also found that Delgado had presented no evidence that Certified regarded him as disabled and observed that Certified's actions did not evidence a general belief that Delgado was unable to work at a broad class of jobs. The court concluded that because Delgado admitted that his restrictions precluded him from performing the essential functions of his job—and that no accommodation exists that would allow him to perform those functions—he is not a "qualified individual" under the ADA.

On appeal Delgado argues that he was terminated because he was disabled, that Certified regarded him as disabled, and that Certified could have accommodated his disability by transferring him to a different position. To avoid summary judgment, Delgado must show that there is a genuine issue of material fact regarding whether he is a "qualified

individual with a disability" under the ADA.  *See Kupstas v. City of Greenwood*, 398 F.3d 609, 611 (7th Cir. 2005).  According to the ADA, a disability is "'(A) a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.'"  *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 781 (7th Cir. 2007) (brackets in original) (quoting 42 U.S.C. § 12102(2)).  In short, Delgado must present evidence that he was disabled under one or more of these definitions and that he was qualified to perform the essential functions of his job with or without reasonable accommodations.  *See id.; see also EEOC v. Sears, Roebuck & Co.*, 417 F.3d at 789, 796-97 (7th Cir. 2005).

Delgado argues that there is a genuine issue of material fact regarding whether his injury "substantially limits" the major life activity of being able to work.  Delgado contends that he "is obviously precluded from virtually any heavy or manual labor job" based on his work restrictions and claims that his job options are limited because of his age and education.  Delgado maintains that the classified advertisements, cover letters, drug tests, and job applications that he submitted were evidence of his restricted ability to perform a broad class of jobs because "presumably" his lack of job offers was a result of his physical impairments.  The job offers that he did receive are of no consequence, Delgado argues, because he was "forced to conceal his injuries in order to attempt to obtain employment, as recommended by his vocational counselor," and so his potential employers were unaware of his work restrictions.

When a plaintiff claims that he is "substantially limited" in the major life activity of working, he must show that he is "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'"  *Kupstas*, 398 F.3d at 612 (quoting 29 C.F.R. § 1630.2(j)(3)(i)).  The injury must limit employment generally, not merely preclude an employee from a particular job or a narrow range of jobs.  *Id.* at 613.  In general, a claimant must present "some evidence of the number and types of other jobs in the geographical region, from which he would be excluded because of his perceived impairments."  *Id.* at 613 (internal quotation marks and citation omitted).  The requirement to show evidence of general employment demographics, however, is not a per se rule, and in rare cases claimants' "impairments are so severe that their substantial foreclosure from the job market is obvious."  *EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001).

Delgado cites *DePaoli v. Abbott Labs.*, 140 F.3d 668 (7th Cir. 1998), *Best v. Shell Oil Co.*, 107 F.3d 544 (7th Cir. 1997), and *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908 (7th Cir. 1996), to support his contention that this case is one of those rare cases in which his physical limitations alone, without any further evidence of what jobs might be available to him, are sufficient to show that he is precluded from performing any manual labor jobs.  In *DePaoli*,

we concluded that an assembly line worker who could not perform repetitive motions with her right hand because she had tendinitis could establish that she was disabled because this impairment alone was evidence that she could not perform any assembly line work. *DePaoli*, 140 F.3d at 673.  In *Best,* we held that evidence of a truck driver's knee injury, which precluded him from driving, was sufficient to overcome summary judgment on the question whether he was disabled under the ADA.  *Best,* 107 F.3d at 548.  And in *Cochrum*, we held that a coal miner's shoulder injury, which prevented him from performing overhead work, heavy lifting or pulling, and pushing out from his body, might preclude him from performing a broad range of jobs and that "given the breadth of his physician's physical restrictions, a reasonable jury could conclude that Cochrum's shoulder impairment does substantially limit his ability to work."  *Cochrum,* 102 F.3d at 911.

Delgado's restrictions, however, are not nearly as broad as those of the plaintiffs in *DePaoli*, *Best,* and *Cochrum.*  More importantly, his impairments are not so severe that his "substantial foreclosure" from the job market is obvious.  Delgado is significantly more able than the plaintiffs in the cases he cites because he can continue to lift up to 50 pounds on occasion and up to 25 pounds continuously.  In *Contreras v. Suncast Corp.*, 237 F.3d 756, 763 (7th Cir. 2001), we held that a forklift operator who was unable to lift more than 45 pounds, unable to engage in strenuous work, and unable to drive a forklift for more than four hours a day had not "presented evidence that even hints at the notion that he is precluded from a broad class of jobs."  In that case, we specifically distinguished *DePaoli*, *Best,* and *Cochrum,* observing that the "breadth of the restrictions placed on plaintiffs and their doctors' recommendations concerning how their respective injuries would affect their ability to obtain other employment" far exceeded the restriction placed on Contreras.  *Id*. at 763 n.5. Delgado's inability to lift more than 50 pounds does not support his assertion that he is "obviously precluded from virtually any heavy or manual labor job, "particularly given the dearth of evidence documenting the requirements of typical manual-labor jobs.  *See Peters v. City of Mauston*, 311 F.3d 835, 844 (7th Cir. 2005); *see also Squibb,* 497 F.3d at 783.

Delgado's job search further undermines his claim that he is substantially restricted from a broad class of jobs.  Delgado received several job offers that he chose to disregard because he presumed that the jobs would exceed his restrictions, although there is no evidence showing that Delgado's assumption was correct.  Delgado suggests that because the employers who offered him jobs did not know of his physical impairments, we should make the negative inference that the many employers who rejected his job applications did so only because they were aware of his physical impairments.  This is nonsensical, purely speculative, and particularly unpersuasive considering that it was Delgado's decision not to inform potential employers of his impairments.  Despite scores of pages of exhibits, Delgado has presented no evidence that his failure to obtain a job was the result of his injury.

Delgado also argues that he is disabled under the ADA because Certified regarded him as disabled. This argument hangs on an even thinner reed. Delgado maintains that the fact that he was fired after being placed on permanent lifting restrictions is sufficient evidence that Certified regarded him as disabled. But the evidence in the record shows only that Certified fired Delgado because he could no longer perform his specific job as a warehouse picker. It is unclear how the circumstance of Delgado's termination, in itself, could be evidence that Certified regarded him as unable to work in a broad class of jobs. *See Kupstas*, 398 F.3d at 613. At most, Delgado's termination demonstrates only that Certified regarded him as unable to work in the specific job of warehouse picker. *Cf. id.* at 612. This is insufficient to show discrimination. *Id.* at 614-15; *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200 (2002). Delgado has failed to present any other evidence that he was disabled under the ADA, and thus his claim must fail.

Moreover, even if Delgado were able to demonstrate that he is disabled, he has failed to show that there is a genuine issue of material fact regarding whether he is a "qualified individual with a disability" under the ADA. A qualified individual with a disability is "'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions'" of the job that he has or desires. *Sears, Roebuck & Co.*, 417 F.3d at 797 (quoting 42 U.S.C. § 12111(8)). The ADA requires that an employer make "'reasonable accommodations' to a disabled qualified employee's limitations, unless the employer can demonstrate that to do so would impose an 'undue hardship.'" *Id.* at 802 (quoting 42 U.S.C. § 12112(b)(5)(A)). The burden is on the plaintiff to show that there is a vacant position for which he is qualified, and only then may we consider whether the failure to provide an accommodation was caused by a flaw in the interactive process. *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005).

The parties do not dispute that Delgado's work restrictions prevented him from working in the refrigerated warehouse. But Delgado has failed to submit evidence that there was any reasonable way for Certified to accommodate that restriction, nor does he point to any available positions for which he was qualified. Delgado maintains that Certified should have accommodated his disability by transferring him to a permanent light-duty position. He contends that the fact that Certified allowed him to perform light-duty work for more than eight weeks "calls into question the temporary nature of light duty work." Although it is true that Certified permitted Delgado to remain on light duty for longer than the eight-week maximum specified in the collective bargaining agreement, this is not enough to "call into question" the temporary status of light-duty work, nor should Certified be punished for maintaining a flexible rehabilitation program. The undisputed evidence shows that Certified often allowed its employees to remain on light duty as long as they were reasonably expected to fully recuperate. The record also shows that no

permanent light-duty positions existed at Certified. The ADA does not require Certified to create a job for Delgado or permanently assign him to light-duty work. *See Watson v. Lithonia Lighting,* 304 F.3d 749, 752 (7th Cir. 2002).[1] Therefore, Delgado has failed to meet his burden to show that Certified could have made reasonable accommodations.

Because Delgado has failed to show that he is disabled under the ADA, we AFFIRM the judgment of the district court.

---

[1] Delgado suggests that the merger of two local unions made jobs available that he could have worked. There is no evidence in the record, however, suggesting that such a merger would expand the universe of jobs available to Delgado, that Delgado was qualified for any jobs covered by the merged bargaining unit, or that any vacancies existed for any jobs covered by that bargaining unit.